STATE BOARD OF MEDICAL EXAMINERS OF NEW JERSEY, PLAINTIFF-PROSECUTOR, v. JOSEPH M. GROSSMAN, DEFENDANT-RESPONDENT.

Argued May 7, 1946—Decided August 19, 1946.

402

———

Before Justices BODINE, PERSKIE and WACHENFELD.

For the prosecutor, *Walter D. Van Riper,* Attorney-General (*Joseph A. Murphy,* Assistant Attorney-General, of counsel).

For the respondent, *David T. Wilentz* (*Arthur J. Sills,* of counsel).

The opinion of the court was delivered by

PERSKIE, J.   The question for decision is whether the respondent illegally engaged in the practice of medicine.

Prosecutor, State Board of Medical Examiners of New Jersey, caused a duly verified complaint to be filed in the Second Judicial District Court of the County of Middlesex charging that respondent, Joseph M. Grossman, practiced medicine (*R. S.* 45 :9–18) during the months of November and December of 1944, in the City of Perth Amboy, New Jersey, without first having obtained a license (*R. S.* 45 :9–22, as amended by *Pamph. L.* 1939, *ch.* 115, *p.* 419, § 29).

A warrant was issued.  That warrant states the provisions of the law which respondent allegedly violated as required by *R. S.* 45 :9–22.  These provisions are the same as those set down in the complaint.

The trial judge heard the cause in a summary manner, without a jury.  *R. S.* 45 :9–23.  He determined that respondent did not practice medicine and dismissed the complaint accordingly.  Prosecutor was allowed a writ of *certiorari.*

The applicable law is settled.  When the trial judge sits in a case tried, as this was, in a summary manner, without a jury, he determines the facts in accordance with his appraisal of the evidence.  *Cf. Bound Brook Stove Works* v. *Ellis,* 98 *N. J. L.* 523 (and cases collated at *p.* 524) ; 122 *Atl. Rep.* 690.  We do not weigh the evidence.  Our concern is whether

there is legal evidence to support the fact finding of the court below. *Bound Brook Stove Works* v. *Ellis, supra; State Board of Medical Examiners* v. *Citarella,* 113 *N. J. L.* 210, 213, 214; 174 *Atl. Rep.* 24; *State Board of Medical Examiners* v. *Coleman,* 132 *N. J. L.* 64, 66; 38 *Atl. Rep.* (2d) 689. It is only when there is no proof to support the fact determination as made, or when the determination is made erroneously as a matter of law, that such determination is remediable on appeal. *R. S.* 2:32–204. *Cf. Huels* v. *General Electric Co.,* 134 *N. J. L.* 165 (and cases collated at *p.* 169); 46 *Atl. Rep.* (2d) 654.

We think that the court below fell into reversible error, as a matter of law, in determining that respondent had not illegally engaged, as charged, in the practice of medicine. In reaching this result we have totally disregarded all contradicted proofs and have considered the uncontradicted proofs only. Such proofs disclose what follows.

Respondent is not licensed to practice either medicine or chiropractic in this state although he is licensed to practice chiropractic in the States of Kentucky and Nevada. Notwithstanding the fact that respondent has no license so to practice, he has held himself out for the past ten years in the City of Perth Amboy as a "chiropractor" and practiced accordingly. While so practicing respondent was visited by two paid female investigators employed by the prosecutor. Each used an assumed name. Each complained of a "lame back." Each made arrangements with the respondent for a fixed period of treatments and paid him $15 on account of his services. Each signed contracts with respondent which, among other things, emphasized that respondent does not, as a doctor, treat, operate or prescribe but, as a chiropractor, merely adjusts the spinal column. What in fact did respondent do under these contracts? He treated one witness some eleven times in the months of November and December of 1944 and the other three times in the month of December, 1944. Without detailing each treatment, it suffices in our view of the case to observe that he took X-rays of each, took neurocalometer readings of the neck and spine and gave each various chiropractic treatments.

Respondent takes the position here, as he did below, namely that what he did for each investigator constituted the practice of chiropractic and not the practice of medicine within the meaning of the statutes as charged in the complaint and. warrant, and, therefore, he did not practice medicine "in its true sense."

1. The position taken by the respondent is without merit. For respondent did not in fact practice chiropractic within the statutory definition of that term. Subject to provisions not in issue, the practice of chiropractic is defined as "The detecting and adjusting, *by hand only* (italics supplied), of vertebral subluxations." *R. S.* 45:9–14.5. Clearly, respondent's manner or method of treatment embraced extra instrumentalities. However desirable the use of such instruments may be, their use is not treatment "by hand only." *Cf. State Board of Medical Examiners* v. *Johnson,* 6 *N. J. Mis. R.* 455; 141 *Atl. Rep.* 591 (use of electric current by chiropractor prohibited); *affirmed,* 105 *N. J. L.* 498; 144 *Atl. Rep.* 921. See Annotation (electric treatment by chiropractors) in 115 *A. L. R., pp.* 957, *et seq.* Moreover, subject to exceptions not here pertinent, the statute provides that "* * * the practice of medicine * * * shall be deemed to include, *inter alia,* the practice of * * * chiropractic * * *." *R. S.* 45:9–5.1.

No argument to the contrary, however ingenious, can cloud the clear and explicit classifications into which the legislature placed the practice of chiropractic. It is not a good answer to say, as it is said, that *R. S.* 45:9–5.1 is not applicable because it was not set down in the complaint or warrant as one of the provisions of the law that respondent allegedly violated, as required by *R. S.* 45:9–22. The provisions which respondent allegedly violated are those which the legislature defined as constituting the practice of medicine (*R. S.* 45:9–18) and those which define a penalty for so practicing without a license (*R. S.* 45:9–22, as amended, *supra*). The reason for *R. S.* 45:9–5.1 is not, as argued, to fill a gap in the penalty section of the statute (*R. S.* 45:9–22), in which no reference is made to the practice of chiropractic, but simply to make abundantly clear that the legislature intended to

include the practice of chiropractic within the meaning of the practice of medicine as set down in *R. S.* 45:9–18.

Thus whether, as claimed for respondent, one who practices chiropractic merely analyzes and adjusts the ailment, while one who practices medicine diagnoses and treats the ailment, the end result, apart from the play on words, is that each undertakes by his particular means or methods to relieve the patient from his ailment or disease. Here each investigator stated to respondent the condition for which each desired treatment and relief, and that treatment was accorded by respondent. That was practicing medicine within the meaning of *R. S.* 45:9–18 as charged. *State Board of Medical Examiners* v. *Citarella, supra* (at *p.* 213), and cases there collated. *Cf. Kahn* v. *Metropolitan Life Insurance Co.,* 132 *N. J. L.* 503, 505, 506; 41 *Atl. Rep.* (*2d*) 329.

2. There is no merit to the respondent's contentions that his asserted rights under article I, paragraph 1 of our state constitution and under the Fifth and Fourteenth Amendments of our federal constitution were violated.

We take up these contentions, although they were neither raised nor argued below (*Cf. Dickinson* v. *Plainfield,* 116 *N. J. L.* 336, 338; 184 *Atl. Rep.* 195) because respondent's contentions involve the public policy of the state. *Cf. State* v. *Guida,* 118 *N. J. L.* 289; 192 *Atl. Rep.* 445; *affirmed,* 119 *N. J. L.* 464; 196 *Atl. Rep.* 711.

The State clearly had the power to regulate the practice of medicine. *Pinkus* v. *MacMahon,* 129 *N. J. L.* 367, 369; 29 *Atl. Rep.* (*2d*) 885; *Black* v. *MacMahon,* 130 *N. J. L.* 323, 324, 325; 32 *Atl. Rep.* (*2d*) 716; *affirmed,* 132 *N. J. L.* 171; 39 *Atl. Rep.* (*2d*) 135. When the State included the practice of chiropractic within the meaning of the practice of medicine, it did so for the protection and the general welfare of society. It was "* * * entirely within the power of the legislature to label chiropractic as a branch of medicine * * *." *State Board of Medical Examiners* v. *Mazu,* 9 *N. J. Mis. R.* 171, 172; 153 *Atl. Rep.* 259. The relation which the practice of chiropractic bears to the practice of medicine amply supports its inclusion within the meaning of the practice of medicine. *Cf. State Board of Medical Ex-*

aminers v. *Maza, supra;* *State Board of Medical Examiners* v. *Coleman, supra;* *Kahn* v. *Metropolitan Life Insuarnce Co., supra* (at *p.* 506).

There is nothing in the proofs adduced and the law applicable thereto to support the respondent's claim that the inclusion of the practice of chiropractic within the meaning of the practice of medicine operated unreasonably to deny his asserted rights under our state and federal constitutions. For analogy compare, *Louisiana State Board of Medical Examiners* v. *Fife,* 162 *La.* 681; 111 *So. Rep.* 58; 54 *A. L. R.* 594. In that case it was held that "to practice chiropractic is to practice medicine" and that such holding did not violate the chiropractor's rights—substantially the same as those asserted by respondent—under the state constitution and under the federal constitution. Petition for a re-hearing denied. On writ of error, the judgment of the Court of Louisiana was affirmed by the Supreme Court of the United States. 274 *U. S.* 720; 71 *L. Ed.* 1324. That affirmance was on the authority of *Dent* v. *West Virginia,* 129 *U. S.* 114; 32 *L. Ed.* 623; *Douglas* v. *Noble,* 261 *U. S.* 165; 67 *L. Ed.* 590; *Graves* v. *Minnesota,* 272 *U. S.* 425; 71 *L. Ed.* 331. For further analogy, compare *Collins* v. *Texas,* 223 *U. S.* 288; 56 *L. Ed.* 439, sustaining the inclusion of osteopathy in the practice of medicine.

The judgment is reversed, with costs.