NEW JERSEY CHIROPRACTIC ASS'N et al. v. STATE BOARD OF MEDICAL EXAMINERS OF NEW JERSEY et al.

NEW JERSEY STATE SOCIETY OF NATUROPATHS et al. v. STATE BOARD OF MEDICAL EXAMINERS OF NEW JERSEY et al.

Civ. Nos. 10900, 10901.

District Court, D. New Jersey.

Aug. 10, 1948.

Meyer M. Semel, of Newark, N. J., for plaintiffs.

Walter D. Van Riper, Atty. Gen., of New Jersey, and Joseph A. Murphy, Asst. Deputy Atty. Gen., for defendants.

330

FORMAN, District Judge.

In suit C-10900, the plaintiffs, New Jersey Chiropractic Association, (hereinafter called the Chiropractic Association) a New Jersey corporation and Joseph W. McGillvary, and in suit C-10901, the plaintiffs, New Jersey State Society of Naturopaths, (hereinafter called the Naturopathic Society) likewise a New Jersey corporation and Joseph Tugliglowicz, bring actions against the same defendants in each case, namely the State Board of Medical Examiners of New Jersey, (hereinafter called the State Board) and Walter D. Van Riper, Attorney General of New Jersey, to restrain actions in the courts of the State of New Jersey and to have declaratory judgments entered adjudicating as unconstitutional certain portions of the Medical Practice Act of the State of New Jersey, N.J.S.A. 45:9–1 et seq. Jurisdiction in this court is alleged by virtue of the provisions of 28 U.S.C.A. § 41(14)[1] and 28 U.S.C.A. § 400[2] founded on violations of 8 U.S.C.A. § 43 (Civil Rights Act),[3] clause 1, section 2 of Article IV[4] of, and the Fourteenth Amendment[5] to, the Constitution of the United States.

In the first count of the complaint in C-10900 the plaintiff Chiropractic Association alleges itself to be an association established to act in the best interests of prac-titioners in the art of chiropracty; that chiropracty, as practiced, requires no drugs, medication, or surgery as in the other medical sciences such as medicine and surgery; that it is a healing art of long recognition; and that its practice in the State of New Jersey is prescribed by restrictions set up by the defendant State Board, most of whose members are practitioners in medicine, a healing art which is given a monopoly in the State of New Jersey. It is further alleged that members of the Association have been prosecuted for illegal practice of medicine by the defendants upon no other grounds than that the Association members employed devices standard to the practice of chiropracty, but held to be practice of medicine. As a result of the practices of the defendants, chiropractors are alleged to be denied the right to practice a lawful occupation; even though they are graduates of recognized schools of chiropracty. The legislature has now barred licensing of applicants who desire to practice chiropracty unless they meet standards unnecessary for the practice of chiropracty; no school for instruction of chiropracty is permitted in New Jersey; and the State Board has instituted summary proceedings against Chiropractors as a result of detection machinery established by the State Board. It is charged that in

[1] "Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation, under color of any law, statute, ordinance, regulation, custom, or usage, of any State, of any right, privilege, or immunity, secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

[2] "In cases of actual controversy (except with respect to Federal taxes) the courts of the United States shall have power upon petition, declaration, complaint, or other appropriate pleadings to declare rights and other legal relations of any interested party petitioning for such declaration, whether or not further relief is or could be prayed, and such declaration shall have the force and effect of a final judgment or decree and be reviewable as such."

[3] "Every person who, under color of any statute, ordinance, regulation, cus-tom, or usage, of any State of Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[4] "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

[5] The applicable section is as follows: "Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

these proceedings, offenders are denied trial by jury, are penalized by monetary fines and committed to imprisonment for failure to pay the fines and additionally, that the offender is subject to injunction by the Court of Chancery.

In the second count the plaintiff Joseph W. McGillvary alleges that he is a graduate of a school of chiropracty and that he is licensed to practice in Maryland, Nevada, and Tennessee. He claims to have applied to the State Board for a license to practice Chiropracty but was refused admission to the examinations for the reason that he is not qualified under the conditions specified in the Medical Practice Act. Plaintiff further alleges to have been arrested upon a complaint of a member of the State Board for violation of the Medical Practice Act and is now temporarily released after posting bail to await trial in the First District Court of Jersey City, New Jersey. Plaintiff McGillvary incorporates the allegations of count 1 into his complaint.

Both plaintiffs allege that the defendants violate 8 U.S.C.A. § 43 and the Fourteenth Amendment in the following manner:

(1) Portions of Title 45, chapter 9, N.J. S.A. and the manner of enforcement by the State Board confer a special and exclusive monopoly on medical and surgical practitioners by restricting care and treatment of the citizens of New Jersey to this form of therapy although large numbers of persons are opposed to it.

(2) Deprivation of the citizens of New Jersey of the right to derive from chiropractic therapy the benefits resulting from drugless and surgeryless treatment.

(3) Forbidding members of the Chiropractic Association from engaging in and practicing their calling.

(4) Requiring chiropractors to be examined in certain phases of the medical sciences in accordance with the provisions of N.J.S.A. 45:9-15,[6] such conditions being unnecessary for the practice of chiropracty and unwarranted by the legitimate use of the police power.

(5) Conferring a monopoly upon physicians and surgeons and prohibiting the use of chiropractic remedies although such treatments are without drugs or surgery and are not deceitful, harmful or injurious to persons receiving the same.

(6) Prohibiting chiropractors from practicing although there is no contention or proof that chiropractors are ignorant or incompetent to the detriment of the public in the application of the methods used.

(7) Arbitrarily interfering with the business or occupation of the Chiropractic Association members under the guise of protecting the public interest through the medium of imposing unnecessary and confiscatory restrictions.

---

[6] "All examinations shall be written in the English language, and, except as otherwise provided in the exemptions contained in this chapter (45:9-1, et seq.), the questions shall be such as can be answered in common by all schools of practice. The examinations shall be in the following subjects: Pharmacology and therapeutics; obstetrics and gynecology; diagnosis, including diseases of the skin, nose and throat; surgery, including surgical anatomy and diseases of the eye, ear and genito-urinary organs; anatomy; physiology; chemistry; histology; pathology; bacteriology; hygiene; medical jurisprudence; and such other subjects as the board may decide. If any applicant has completed a course of four full school years of study in and has been regularly graduated from a school of homeopathy or selecticism, the member or members of the board of those schools, respectively, shall examine such applicant in the pharmacology and therapeutics of the school from which such applicant has been so graduated. All examinations shall be both scientific and practical, and of sufficient severity to test the candidate's fitness to practice medicine and surgery. If the examination is satisfactory, the board shall issue a license entitling the applicant to practice medicine and/or surgery in this State. Said application and examination papers shall be retained in the files of the board for a period of five years, and shall be prima facie evidence of all matters therein contained. All licenses shall be signed by the president and secretary of the board and attested by the seal thereof. All licenses granted under the exemptions contained in this chapter (45:9-1, et seq.) shall bear indication of the school of practice in which the licensee is limited by virtue of said license to practice."

(8) Usurping the prerogatives of the citizens of New Jersey in enforcing the concept that the practice of medicine and surgery is the only proper school of treatment.

(9) Failing to provide for the examination and licensing of chiropractors qualified to practice chiropracty and establishing the policy that chiropracty is co-extensive in scope with that of medicine and surgery.

(10) Including the unrelated and harmless art of chiropracty within the terms of the Medical Practice Act governing the practice of medicine although the act is only intended to regulate and safeguard the use of powerful and dangerous treatments, i. e. drugs, medicines and surgery.

(11) Prohibiting the treatment of illnesses which dispense with the use of drugs, medicine and surgery.

(12) By making illegal arrests, obtaining convictions and imposing fines or sentences of imprisonment without trial by jury in a summary and unlawful manner contrary to the laws of the United States.

(13) By sponsoring legislation and obtaining jurisdictional determinations thereof, which are harsh, oppressive, arbitrary and unreasonable, in that specified acts (15 acts comprising the allegations charged against the individual plaintiffs in the State courts as violations of the law such as giving electrical treatments by one not licensed to practice medicine, etc.) are maintained as violations of the Medical Practice Act.

(14) Prohibiting the establishment and denying the right to the people of New Jersey of a school which instructs in the practice of chiropracty.

(15) Prosecuting individual plaintiffs for the illegal practice of medicine when the healing arts alleged to be illegal come within the legitimate scope of chiropracty.

The plaintiffs further complain of the activities of the defendant Van Riper in enforcing the penalty clauses of the Medical Practice Act by virtue of his official position as Attorney General of the State of New Jersey.

In the first count of the complaint in C–10901, the plaintiff Society of Naturopaths alleges that it is a society established to advance the interest of naturopaths by establishing schools, conducting clinics, hospitals and dispensaries and establish county societies for the protection of naturopaths and upholding of professional ethics and the furthering of social intercourse between its members. It claims that the science of naturopathy requires the use of no drugs, surgery, etc., but that it employs air, light, water, vibrations, heat, electricity, hydrotherapy, physic-therapy, dietetics and massage in its treatment. It is alleged that it is of ancient origin and widely practiced; that no legislation of New Jersey has excluded or included naturopathy but that the State Board, empowered by the legislature, has refused admission to examinations by qualified graduates of recognized schools of naturopathy; and that the Medical Practice Act completely fails in any fashion to mention naturopaths yet the science is proscribed as a result of the activities of the defendants State Board and the Attorney General.

In the second count plaintiff Joseph Tugliglowicz alleges that he is a graduate of a recognized school of naturopathy and licensed in the State of Connecticut and that he has been three times convicted in the State of New Jersey for the practice of medicine without a license and that in May of 1947 he was arrested upon a complaint filed in the District Court of Essex County by a member of the State Board. Plaintiff Tugliglowicz further incorporates the allegations of count 1.

Both plaintiffs allege, in terms similar to the complaint filed in C–10900, violations of 8 U.S.C.A. § 43 and the Fourteenth Amendment, with the exceptions that the science alleged to be discriminated against is that of naturopathy.

After the matter was submitted, an application was made to amend the complaint in C–10900 (Chiropractic Association et al.) by permitting the addition of two plaintiffs, Frank Bridge, Jr., and Robert Wellington Bridge, and in C–10901 (Society of Naturopaths et al.) by the addition of Alfred Lindeman as a plaintiff. In C–10900 the added plaintiffs' allegations are contained in counts 4 and 5 respectively (there

is no count 3) and charge that judgments have been entered against them in the First District Court of Paterson, New Jersey for violation of the New Jersey Medical Practice Act. They claimed to have applied for writs of certiorari, but these were denied by a Justice of the New Jersey Supreme Court. These plaintiffs expressly adopt the cause of action set forth in the first count. In C–10901 the added plaintiff's allegations are contained in count 3 and charge that he has been released on bail by the District Court of the First Judicial District of Union County for violation of the Medical Practice Act to await trial. He adopts count 1 and incorporates it into his complaint.

In addition an application is made by all plaintiffs for a temporary injunction to stay all proceedings against all individual plaintiffs in the respective state courts until the issues raised in the complaints herein are finally determined and that a three judge court should be convened for the purpose of entering interlocutory injunctions pursuant to 28 U.S.C.A. § 380.[7]

Each plaintiff is alleged to be a resident of the State of New Jersey.

The defendants moved to set aside the service of the summonses and the complaints and to dismiss each of the causes thereof. A consolidated argument on behalf of all plaintiffs was reduced to one brief which was submitted on their behalf. Defendants filed their brief covering both cases and plaintiffs submitted a reply brief.

Stripped to their essentials, the allegations of the plaintiffs resolve themselves primarily into the following constitutional issues in which the plaintiffs challenge:

(1) The right of the State of New Jersey to define the scope of what constitutes the practice of medicine in the manner in which it has done so.

(2) The right of the State of New Jersey to control the practice of medicine by means of its licensing system.

(3) The right of the State of New Jersey to determine the accreditation to and the regulation of schools located within its boundaries concerned with instruction in the healing arts.

(4) The right of the State of New Jersey to authorize its State Board of Medical Examiners, in the manner in which it has done so, to establish the standards by which schools instructing in the healing arts will be accredited, applicants for licenses to practice the healing arts are to be rated and to initiate legal actions on behalf of the State if such regulations as established by the State Board are violated

(5) The right of the State of New Jersey to try alleged violators of statutes and regulations so established without a jury.

■■ Among other arguments, the defendants raise the jurisdictional question that the instant cases are suits against the State of New Jersey itself without its consent and therefore are prohibited by the Eleventh Amendment [8] to the Constitution of the United States. Defendants in these cases are in the position of the defendants

---

[7] "No interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a State by restraining the action of any officer of such State in the enforcement or execution of such statute, or in the enforcement or execution of an order made by an administrative board or commission acting under and pursuant to the statutes of such State, shall be issued or granted by * * * any district court of the United States, or by any judge thereof, * * * upon the ground of the unconstitutionality of such statute, unless the application for the same shall be presented to a * * * district judge, and shall be heard and determined by three judges, of whom at least one shall be a justice of the Supreme Court or a circuit judge, and the other two may be either circuit or district judges, and unless a majority of said three judges shall concur in granting such application. Whenever such application as aforesaid is presented to a * * * judge, he shall immediately call to his assistance to hear and determine the application two other judges: Provided, however, That one of such three judges shall be a justice of the Supreme Court, or a circuit judge."

[8] "The Judicial power of the United States shall not be construed to extend to any suit in law or in equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."

334

in Ex parte Young, 209 U.S. 123, 155–156, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A.,N.S., 932, 14 Ann.Cas. 764, and the cases following it wherein it is held, among other things, that a suit against state officers who are clothed with some duty in the enforcement of a state statute alleged to be unconstitutional may be enjoined by a federal court if such statute is found to violate the Federal Constitution. Therefore, there is no merit to the contention of the defendants in this respect.

■ As heretofore indicated, the plaintiffs allege clause 1, section 2 of Article IV of the United States Constitution to be violated by the defendants. This section of the Constitution is inapplicable to confer jurisdiction in a federal court where allegations as to diversity of citizenship are lacking as in these causes. Hague v. Committee for Industrial Organization, 307 U. S. 496, 511, 59 S.Ct. 954, 83 L.Ed. 1423.

■ In view of the fact that the Medical Practice Act of New Jersey has been carried to the New Jersey Court of Errors and Appeals for construction in the case of State Board of Medical Examiners v. Grossman, 135 N.J.L. 468, 52 A.2d 699, affirming sub nom., 134 N.J.L. 401, 48 A.2d 700, a decision of the Supreme Court of New Jersey approving prior cases cited therein, this court must exercise jurisdiction provided a substantial question under the Federal Constitution is presented. American Federation of Labor v. Watson, 327 U.S. 582, 593–596, 66 S.Ct. 761, 90 L.Ed. 873.

■ Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152, enunciates the rule which governs the instant situation. In the Poresky case, the petitioner applied to the Supreme Court of the United States for leave to file a writ of mandamus against a District Court judge who had refused to convene a statutory three judge court to pass upon an application for an interlocutory injunction to enjoin a compulsory automobile liability insurance statute in accordance with the provisions of 28 U.S. C.A. § 380. All parties to the action were residents of the Commonwealth of Massachusetts. The trial court dismissed the application for want of jurisdiction as there was no diversity of citizenship and no substantial federal question presented. Leave to file a petition for writ of mandamus was denied by the Supreme Court, the governing portion of the per curiam decision is as follows:

"The District Judge recognized the rule that if the court was warranted in taking jurisdiction and the case fell within section 266 of the Judicial Code (28 U.S.C.A. § 380), a single judge was not authorized to dismiss the complaint on the merits, whatever his opinion of the merits might be. Ex parte Northern Pacific Ry. Co., 280 U.S. 142, 144, 50 S.Ct. 70, 74 L.Ed. 233; Stratton v. St. Louis Southwestern Ry. Co., 282 U.S. 10, 15, 51 S.Ct. 8, 75 L.Ed. 135. But the provision requiring the presence of a court of three judges necessarily assumes that the District Court has jurisdiction. In the absence of diversity of citizenship, it is essential that a substantial federal question should be presented. 'A substantial claim of unconstitutionality is necessary for the application of section 266.' Ex parte Buder, 271 U.S. 461, 467, 46 S.Ct. 557, 559, 70 L.Ed. 1036; Louisville & Nashville R. Co. v. Garrett, 231 U.S. 298, 304, 34 S.Ct. 48, 58 L.Ed. 229. That provision does not require three judges to pass upon this initial question of jurisdiction.

"The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint. Mosher v. Phoenix, 287 U.S. 29, 30, 53 S.Ct. 67, 77 L.Ed. 148; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 77 L.Ed. 1062." 290 U.S. at pages 31, 32, 54 S.Ct. at page 4.

■ The court is therefore confronted in the instant cases with the necessity of determining whether plaintiffs have raised a substantial question under the United States Constitution which has not been ruled upon by the United States Supreme Court since no diversity of citizenship exists.

■ Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623, sets forth the basic considerations upon which a state may regulate given occupations and profes-

sions. At page 121 of 129 U.S., at page 233 of 9 S.Ct. the court stated that:

"It is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose, subject only to such restrictions as are imposed upon all persons of like age, sex, and condition. This right may in many respects be considered as a distinguishing feature of our republican institutions * * * The power of the State to provide for the general welfare of its people authorizes it to prescribe all such regulations as in its judgment will secure or tend to secure them against the consequences of ignorance and incapacity, as well as of deception and fraud. As one means to this end and it has been the practice of different states, from time immemorial, to exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely; their possessions being generally ascertained upon an examination of parties by competent persons, or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty. It is only when they have no relation to such calling or profession, or are unattainable by such reasonable study and application, that they can operate to deprive one of his right to pursue a lawful vocation."

In the case of People v. Vogelgesang, 221 N.Y. 290, 116 N.E. 977, 978, Justice Cardoza noted that:

"The law exacts no license for ministration by prayer or by the power of religion. But one who heals by other agencies must have the training of the expert."

In McNaughton v. Johnson, 242 U.S. 344, 37 S.Ct. 178, 180, 61 L.Ed. 352, Ann. Cas.1917B, 801, it was declared:

"It is established that a state may regulate the practice of medicine, using this word in its most general sense."

The reason is given in Hawker v. New York, 170 U.S. 189, 195, 18 S.Ct. 573, 42 L.Ed. 1002, quoting from State v. Hathaway, 115 Mo. 36, 47, 21 S.W. 1081, 1083, that:

"The legislature, then, in the interest of society, and to prevent the imposition of quacks, adventurers, and charlatans upon the ignorant and credulous, has the power to prescribe the qualifications of those whom the State permits to practice medicine."

In Lambert v. Yellowsley, 272 U.S. 581, 596, 47 S.Ct. 210, 214, 71 L.Ed. 422, 49 A.L.R. 575 it was stated:

"Besides, there is no right to practice medicine which is not subordinate to the police power of the states, * * *."

Decisions of the United States Supreme Court involving the same or sufficiently analogous questions as those raised by the plaintiffs are as follows:

Dent v. West Virginia, supra, upheld the conviction of a practicing physician of some years experience who had not met license requirements established after the physician commenced the practice of medicine because he had not graduated from a school recognized by the Board of Health.

In Hawker v. New York, supra, a statute barring the practice of medicine to a previously licensed physician upon conviction for a felony was upheld.

Reetz v. Michigan, 188 U.S. 505, 23 S.Ct. 390, 47 L.Ed. 563, involved a statute which granted to the board of medical examiners authority to pass upon the qualifications necessary for the practice of medicine and authorized certain functions attacked as judicial in nature. On appeal the statute was upheld as constitutional, the decision holding that there is no provision in the Federal Constitution forbidding a state from granting to a tribunal, whether called a court or board of regulation, the final determination of a legal question, nor was due process of law necessarily judicial process.

In Watson v. Maryland, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987, a statute regu-

lating the practice of medicine was held constitutional after attacks against provisions granting exemptions and exceptions to its operation.

Collins v. Texas, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 439 upheld a statute regulating the practice of osteopathy attacked as unconstitutional because the licensing act established standards unnecessary for the practice of osteopathy.

Crane v. Johnson, 242 U.S. 339 37 S.Ct. 176, 61 L.Ed. 348, Ann.Cas. 1917B, 796 concerned a California statute regulating drugless practitioners whose mode of practice was prayer and religious faith. This statute was upheld as constitutional after being attacked by the complainant as discriminating between those practicing faith healing only and those practicing a species of treatment which relied upon faith healing but additionally involved special skill, experience and ability to diagnose disease.

In McNaughton v. Johnson, supra, the appellant was an opthamologist who complained that her profession did not require use of drugs and that no law of California prescribed regulations for the practice of opthamology. The appellant claimed that the optometry practice act of California offended the Fourteenth Amendment in that it deprived her of property without due process of law and denied equal protection of the laws; and specified, among other claims, that the act appropriated to the sole use of optometrics the right to employ any means other than the use of drugs in the measurement of the powers or range of vision and that other schools of scientific learning and practices were denied the right to measure the range of human vision other than by the use of drugs. Appellant contended that her occupation was a lawful one, not hurtful to the individual or dangerous to, the community and that the State had no power to impose discriminatory regulations upon it. A three judge court held constitutional the statutes complained of. The Supreme Court affirmed.

In Douglas v. Noble, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590, the delegation of power to determine fitness for the practice of dentistry to a board of examiners was upheld.

Graves v. Minnesota, 272 U.S. 425, 47 S.Ct. 122, 71 L.Ed. 331, sustained the conviction of a dentist for practice of dentistry without a license even though the appellant was a graduate dentist. His application for a license was denied because he had not graduated from an accredited dental school, the accredation established by the examining board.

Louisiana State Board of Medical Examiners v. Fife, 162 La. 681, 111 So. 58, 54 A.L.R. 594, writ of error denied, 274 U.S. 720,[9] 47 S.Ct. 590, 71 L.Ed. 1324, held that chiropractors are not unconstitutionally denied the protection of the laws by being required to have a knowledge of materia medica and surgery to receive a license to practice their profession when such knowledge was not required of allied medical sciences and that the practice of medicine may consist in the application of physical force to parts of the body for the purpose of curing disease or relieving bodily ailments. The court further held that no one had a natural or absolute right to practice medicine or surgery. And see Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086.

■ In the light of the foregoing decisions, the complainants' attack upon the New Jersey Medical Practice Act, N.J.S.A. 45:9-1 et seq., appears to raise no substantial question that their rights under the Constitution of the United States are violated by it as they suggest. The State of New Jersey has established direct, positive and definite standards for the practice of medicine and the allied healing arts consistent with its police power as a state.

■■ Plaintiffs further contend that by virtue of the decision in the case of State Board of Medical Examiners v. Grossman, supra, in interpreting the penalty clauses of the Medical Practice Act, N.J.S.A. 45:9-23, denying the right to trial by jury, the State of New Jersey has deprived them of their right to trial by jury

---

[9] This case was considered by the Supreme Court of New Jersey in State Board of Medical Examiners v. Grossman, 134 N.J.L. 401, at page 406, 48 A.2d 700.

under the United States Constitution. The cases cited by them in their briefs are inapplicable here. They concern themselves with the right to trial by jury in federal courts where federal statutes or rules of court are involved. On the contrary, where, as here, the right is invoked under a constitution or statute of a state, the rule in Palko v. Connecticut, 302 U.S. 319, at page 324, 58 S.Ct. 149, 151, 82 L.Ed. 288, governs as it is therein stated in the following language:

"The Sixth Amendment calls for a jury trial in criminal cases and the Seventh for a jury trial in civil cases at common law where the value in controversy shall exceed $20.00. This court has ruled that consistently with those amendments trial by jury may be modified by a state or abolished altogether. Walker v. Sauvinet, 92 U.S. 90, 23 L.Ed. 678; Maxwell v. Dow, 176 U.S. 581, 20 S.Ct. 448, 494, 44 L.Ed. 597; New York Central R. Co. v. White, 243 U.S. 188, 208, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A. 1917 D, 1, Ann.Cas. 1917 D, 629; Wagner Electric Mfg. Co. v. Lyndon, 262 U.S. 226, 232, 43 S.Ct. 589, 591, 67 L.Ed. 961." Again the plaintiffs have failed to present a substantial federal question for consideration of the court because prior decisions of the United States Supreme Court have foreclosed this subject.

The plaintiffs also attack the New Jersey Medical School License Act, N.J.S.A. 18:20–18, which provides as follows:

"No school or college shall be conducted within this state for the purpose of training or qualifying students to practice medicine or surgery or any branch thereof or any method for the treatment of disease or any abnormal physical condition without first securing from the state board of medical examiners a license authorizing it so to do."

This act, plaintiffs insist, is unconstitutional because "no schools for naturopaths, or chiropractors may be maintained in the State of New Jersey. * * *" They allege that a school for instruction in chiropracty was attempted to be organized but that it had been closed as a result of activities on the part of authorities of the State of New Jersey. They insist that it is the right of the people of the State to be given the opportunity to study the sciences of naturopathy and chiropracty and that since such schools are private in nature, the State has no power to interfere with such schools. They state that this law has been construed by the highest court of New Jersey, but do not cite any cases.[10] They submit that a declaratory judgment should be entered in their favor providing that such schools may be established notwithstanding the statute.

From the cases above cited it appears abundantly clear that a state may set reasonable standards by way of educational requirements, examinations, etc., for the determination of the qualifications of those who hold themselves out to the public as practitioners of any form of treatment of disease or abnormal physical condition. It is also held that a state has the right to grant to an administrative body the authority to regulate those standards fixed by the statute.

It follows that a state has the right to determine standards of institutions designed to prepare those who seek to practice the healing arts, and may grant that authority for so determining to an administrative body. Graves v. Minnesota, supra; Douglas v. Noble, supra. If it is a fact that the standards set by the State of New Jersey have so far deterred the establishment of schools for chiropracty and naturopathy, as alleged by the plaintiffs, it is equally true that no group in the field of medicine and surgery has satisfied the statute for no such college or school exists in this state.

In any event the pleadings contain no allegations that any of the plaintiffs have applied for a license to establish a school and have been denied such a permit. They urge only in argument that "need is for declaratory judgment in this specific instance * * * because the establishment of naturopathic and chiropractic schools in the State of New Jersey is one of the many aims of both societies." (The corporate plaintiffs in each case) Such argument can hardly place before a court a justiciable

[10] The statute was held constitutional by the New Jersey Court of Errors and Appeals in College of Mecca of Chiropractic v. State Board of Medical Examiners, 113 N.J.L. 327, 174 A. 562.

issue or controversy that meets the fundamental requirement for a declaratory judgment. See Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 461, 462, 471, 472, 65 S.Ct. 1384, 89 L.Ed. 1725.

In the instant cases the contentions of the plaintiffs come within the language of the Supreme Court in the case of Ex parte Poresky, supra, at page 32, of 290 U.S., at page 4 of 54 S.Ct. wherein it was declared that the question in that case was unsubstantial because:

" 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leaves no room for the inference that the question sought to be raised can be the subject of controversy.' Levering & Garrigues Co. v. Morrin, supra; Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482; McGilvra v. Ross, 215 U.S. 70, 80, 30 S.Ct. 27, 54 L.Ed. 95."

It follows that there exists no reason to convene a three judge court to rule upon the constitutionality of the statutes questioned and the motions to call such a court will be denied for want of jurisdiction. Poresky v. Ryan, 1 Cir., 82 F.2d 311, certiorari denied 298 U.S. 654, 56 S.Ct. 678, 80 L.Ed. 1380, rehearing denied, 298 U.S. 692, 56 S.Ct. 936, 80 L.Ed. 1409. The motions to stay proceedings in the state courts pending a ruling upon the motions for a three judge court will likewise be denied. Beal v. Missouri Pacific R. Corp., 312 U.S. 45, 49, 50, 61 S.Ct. 418, 85 L.Ed. 577.

There remains for determination whether the complaints allege facts to constitute a cause of action under the Civil Rights Statute, 8 U.S.C.A. § 43. To warrant a cause of action under this statute, there must be allegations of violations or denial of some right granted by the United States Constitution on the part of the defendants under color of "any statute, ordinance, regulation, custom, or usage".

Having found that no substantial Federal Constitutional question exists to warrant exercise of jurisdiction, the final question resolves itself into whether the defendants have acted in an unconstitutional manner or have administered the Medical Practice Act and the Licensing Act in an unconstitutional manner. The controlling principles are stated in Snowden v. Hughes, 321 U.S. 1, at page 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 as follows:

"The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person * * *, or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself. * * * But a discriminatory purpose is not presumed * * *; there must be a showing of 'clear and intentional discrimination,' * * *."

That the arts of chiropracty and naturopathy involve the practice of certain forms of treatment of some diseases or abnormalities, organic or functional, of the human body is not contested by the plaintiffs. They assert it is unnecessary in the practice of their forms to qualify themselves in such subjects as surgery, materia medica, etc., as the statute and regulations of New Jersey now generally require of all who would practice "any method of treatment of human ailment, disease, pain, injury, deformity, mental or physical condition," N.J.S.A. 45:9–5.1. The plaintiffs contend that their form should be recognized apart from the general practice of medicine and surgery and that the failure of such recognition constitutes discrimination against them which oppressively deprives them of their right to exercise freedom in offering to administer their forms of therapy to the public.

The State of New Jersey through its agencies, however, has deemed it appropriate that every one who desires to practice "any method of treatment of human ailment, disease, pain, injury, deformity, mental or physical condition" shall be confronted with uniform requirements regardless of what forms of therapy he proposes to administer.

On the face of the complaints there is no showing that the laws and regulations or the administration thereof have been bent to adversely affect the rights of the plaintiffs in these cases or the classes some of them hold themselves out to represent. In fact, in all their details with regard to the prosecution of the individual plaintiffs in these cases, the allegations of the complaints fail to show that the defendants have acted other than as they are required, if they are to properly execute the mandates of the laws and regulations they are bound to administer. As a result there is left no valid charge of purposeful or intentional discrimination and the causes of action under the Civil Rights Statute, 8 U.S.C.A. § 43, must fall.

 Furthermore, the plaintiffs may not convert this federal court into an appellate forum to pass upon the merits of legislation rather than to contest such controversies in the state court system with appeal directly to the United States Supreme Court. As was said by the Court in Beal v. Missouri-Pacific R. Corp. 312 U.S. 45, at pages 49, 50, 61 S.Ct. 418, at page 420:

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. In re Sawyer, 124 U.S. 200, 211, 8 S.Ct. 482, 488, 31 L.Ed. 402; Davis & Farnum Mfg. Co. v. Los Angeles, 189 U.S. 207, 23 S.Ct. 498, 47 L.Ed. 778; Hygrade Provision Co. v. Sherman, 266 U.S. 497, 500, 45 S.Ct. 141, 69 L.Ed. 402. No citizen or member of the community is immune from prosecution, in good faith, for his alleged criminal acts. The imminence of such a prosecution even though alleged to be unauthorized and hence unlawful is not alone ground for relief in equity, which exerts its extraordinary powers only to prevent irreparable injury to the plaintiff who seeks its aid. Terrace v. Thompson, 263 U.S. 197, 214, 44 S.Ct. 15, 17, 68 L.Ed. 255; Packard v. Banton, 264 U.S. 140, 143, 44 S.Ct. 257, 258, 68 L.Ed. 596; Tyson & Bro.–United Theatre Ticket Offices v. Banton, 273 U.S. 418, 428, 47 S.Ct. 426, 427, 71 L.Ed. 718, 58 A.L.R. 1236; Cline v. Frink Dairy Co., 274 U.S. 445, 452, 47 S.Ct. 681, 682, 71 L.Ed. 1146.

"This is especially the case where the only threatened action is the prosecution in the state courts by state officers of an alleged violation of state law, with the resulting final and authoritative determination of the disputed question whether the act complained of is lawful or unlawful. Harkrader v. Wadley, 172 U.S. 148 [149], 19 S.Ct. 119, 43 L.Ed. 399; Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed. 1322. *The federal courts are without jurisdiction to try alleged criminal violations of state statutes. The state courts are the final arbiters of their meaning and appropriate application, subject only to review by this court if such construction or application is appropriately challenged on constitutional grounds.* Hygrade Provision Co. v. Sherman, supra; Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927." [Italics added.]

For the lack of a substantial constitutional question warranting exercise of jurisdiction and failure to state a cause of action or justiciable controversy within the jurisdiction of the court, the complaints will be dismissed.

Orders should be settled in conformity with this opinion.