**BLASS et al. v. WEIGEL et al.**

**Civ. No. 11759.**

United States District Court
D. New Jersey.

June 29, 1949.

Elden Mills, Morristown, N. J., Curley C. Hoffpauir, New York City, of counsel, for plaintiffs.

Theodore D. Parsons, Attorney General of New Jersey, by Joseph A. Murphy, Assistant Deputy Attorney General, for defendants.

FORMAN, District Judge.

Plaintiffs, F. M. Eugene Blass and E. Am. Association for Oxygen-Therapy Incorporated, residents of the State of New Jersey, have brought a declaratory judgment action to have adjudged unconstitutional portions of the Medical Practice of New Jersey, N.J.S.A. 45:9–1 et seq., and in addition seek to recover pecuniary damages from certain named defendants for alleged violations of the Civil Rights Act, 8 U.S.C.A. § 43. The defendants are members of the New Jersey State Board of Medical Examiners, two investigators of the aforesaid Board, the Attorney General of the State of New Jersey, the Assistant Attorney General of New Jersey charged with prosecuting actions instituted by the State Board of Medical Examiners for violations of the Medical Practice Act, and the former Attorney General of New Jersey.

The present proceedings relate to the plaintiffs' motions for a temporary restraining order to stay court actions and to convoke a statutory three judge court to secure an interlocutory injunction; and the defendants' motion to dismiss the complaint.[1]

The complaint, as amended, bears a striking similarity to that filed in this court in the case of Society of Naturopaths v. State Board of Medical Examiners et al., C-10901. See New Jersey Chiropractic Association v. State Board of Medical Examiners, D.C., 79 F.Supp. 327.[2]

Plaintiff, Blass, alleged that he developed a system of curative processes whereby a combination of non-poisonous natural products, beneficial to the human body, eliminates and removes all diseases and ill-health from it and that he assigned the secret formulae for the system to the plaintiff corporation for marketing purposes. He claimed to be a graduate naturopath and that his profession does not employ surgery or processes common to allopathic and homeopathic practitioners but treats diseased bodies by natural means. He alleged that through the action of the defendant investigators of the defendant Board, he was arrested on a warrant, held

[1] Plaintiffs alleged jurisdiction in this court by virtue of the provisions of "U.S.C.; Title 28, sec. 41.(14)" [now 28 U.S.C.A. § 1343] and "U.S.C. Title 28, sec. 400" [now 28 U.S.C.A. §§ 2201, 2202]. They sought a statutory three judge court as provided by "Section 266 of the Judicial Code, as amended, 28 U.S.C.A., Section 380" [now §§ 2281, 2284]. On June 25, 1948, Title 28 of the United States Code was revised, effective September 1, 1948 and the pertinent provisions begin with § 2281. This action was filed October 20, 1948.

[2] For purposes of comparison the following table lists the paragraphs in the respective complaints wherein the allegations are identical or slightly altered to permit the insertion of the proper names of the parties hereto:

| Blass (Instant Suit) | Society of Naturopaths Suit |
|---|---|
| 13 | 12 |
| 14 | 13 |
| 15 | 14 |
| 16 | 15 |
| 17 | 16 |
| 18 | 17 |
| 19 | 18, 19, 20 |
| 20 | 21, 22 |
| 21 | 23 |
| 22 | 24 |
| 23 | 25 |
| 24 | 28 |
| 25 | 29 |
| 26 | 30 |
| 27 | 32 |
| 33 | 33 |
| 34 | 34 |
| 35 | 35 |
| 37 | 37 |
| 38 | 38 |
| 39 | 40 |
| 41 | 43 |
| 42 | 44 |

on bail and tried and convicted in a quasi-criminal action by a state court for violations of the New Jersey Medical Practice Act. He asserted that following his arrest he was denied the right to communicate with counsel and the right to be informed of the nature and details of the accusation against him until he posted security and that after posting bail he was refused a bill of particulars of the accusation against him and trial by jury. He claimed that the evidence presented against him at the trial was secured by professional and anonymous witnesses who called at his place of business and that evidence presented on his behalf clearly proved that he practiced nothing remotely touching medicine and surgery to sustain a conviction for practicing medicine without a license. He contended that the New Jersey Medical Practice Act does not encompass within its terms the science of naturopathy and that conflict, confusion and doubts have arisen because of numerous rulings by the state courts concerning what constitutes the practice of medicine by naturopaths. He further alleged that as a result of the actions of the defendants his business and that of the plaintiff corporation had been seriously impaired. There are additional allegations that the statute confers monopoly upon physicians and surgeons, that the Medical Practice Act is unconstitutional, and that the defendants have unlawfully discriminated against the plaintiffs in favor of allopathic and homeopathic practitioners.

Both plaintiffs allege that the defendants have and continue to violate the Civil Rights Act, 8 U.S.C.A. § 43, and the provisions of the First, Fifth, Sixth, Seventh, Thirteenth and Fourteenth Amendments to the Constitution of the United States in the following manner:

(1) That the enforcement by the defendants of the New Jersey Medical Practice Act confers a special and exclusive monopoly on medical and surgical practitioners by restricting care and treatment of the citizens of New Jersey to these forms of therapy although large numbers of persons are opposed to it.

(2) That the citizens of New Jersey are deprived of the right to derive from naturopathy the benefits resulting from this form of healing.

(3) By forbidding the plaintiff, Blass, and other naturopaths from engaging in and practicing their calling.

(4) By requiring naturopaths to be examined in certain phases of the medical sciences as provided by the provisions of N.J.S.A. 45:9–15, the knowledge of such subjects being unnecessary for the practice of naturopathy and unwarranted by the legitimate use of the police power.

(5) By conferring a monopoly upon physicians and surgeons and prohibiting the use of naturopathic remedies although such treatments are without drugs or surgery and are not deceitful, harmful or injurious to persons receiving the same.

(6) By prohibiting plaintiff Blass, and other naturopaths from practicing although there is no contention or proof that naturopaths are ignorant or incompetent or that their methods are detrimental to the public.

(7) By arbitrarily interfering with the plaintiffs' business and with the professional occupation of plaintiff Blass under the guise of protecting the public interest through the arbitrary and unlawful imposition of unauthorized and confiscatory monopolistic restrictions.

(8) By usurping the prerogatives of the citizens of New Jersey in enforcing the concept that the practice of allopathy—medicine and surgery—is the only proper school or method of treating and curing sickness and disease.

(9) By failing to provide for the examination and licensing of naturopaths qualified to practice naturopathy and establishing the policy that naturopathy is coextensive in scope with allopathy when the defendants know or should know that naturopathy is unrelated to, unlike, distinct from and antagonistic to the theory and practice of allopathy.

(10) By including the unrelated and harmless science of naturopathy within the terms of the Medical Practice Act although the Act is limited to and intended

to regulate and safeguard the use of powerful and dangerous treatments, i. e., drugs, medicines, narcotics, and surgical operations.

(11) By prohibiting the treatment of illness which dispenses with the use of drugs, medicine and surgery.

(12) By illegally arresting, convicting and fining, or sentencing to imprisonment, the plaintiff, Blass, without trial by jury, in a summary and unlawful manner, contrary to the laws of the United States.

(13) By sponsoring legislation and obtaining judicial determinations thereof, which are harsh, oppressive, unlawful, arbitrary and unreasonable, in that said defendants maintain as a violation of the Medical Practice Act, among other charges, 17 specified acts.[3]

In addition there is an allegation that the Medical Practice Act of New Jersey violates Article IV, § 2 of the United States Constitution.

■ The procedure for enjoining enforcement of state statutes and convening a three-judge court is now governed by 28 U.S.C.A. § 2281 et seq. and is based upon former § 266 of the 1911 Judicial Code. See Revisers Notes, Title 28 United States Code, Congressional Service, 1948, pp. 1909–1911. Interpretations prior to the 1948 Code Revision held that in lieu of an allegation of diversity of citizenship there had to exist a substantial federal question which was to be determined from the allegations of the complaint. But, if the complaint showed that the question "is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy * * *' " a federal court is without jurisdiction to convene a three judge court. Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152. Cf. California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1232; Jameson & Co. v. Morgenthau, 307 U.S. 170, 171, 59 S.Ct. 804, 83 L.Ed. 1189. The rule enunciated in the Poresky case has not been altered by the 1948 Revision of Title 28.

■ A long line of decisions have upheld the right of a state to regulate the practice of medicine and the allied professions; to designate, limit or restrict what shall constitute the practice of medicine and the allied sciences; to authorize an administrative agency to provide for the

---

[3] "1. Giving electrical treatment by one not licensed to practice medicine.

"2. Sale by proprietors of food stores of health foods for dieting purposes and advising against the use of certain other foods.

"3. Use of the words or letters 'Dr.', 'doctor', 'professor', 'M. D.', 'M. B.', 'N. D.', in connection with name or any other title intended to imply or designate use as a naturopathic practitioner.

"4. Diagnosis of arthritis and cracked spine with instruction to obtain an X-ray, unaccompanied by treatment or medication.

"5. Applying an instrument with two rubber prongs to back of neck and spine.

"6. Prescribing vitamin capsules, diagnosing arthritis, curvature of spine and stiff joints.

"7. Advising State's witnesses to drink a large glass of lemon juice before going to bed.

"8. Pushing and pressing on spine, legs and ankles.

"9. Applying finger pressure to face, neck and kidneys, diagnosing condition as arthritis and ordering X-rays to be taken without administering or prescribing medication.

"10. Diagnosing State's witness' condition as curvature of spine, attributing condition to a fall.

"11. Explaining conditions as manifested by X-rays.

"12. Applying Noucalometer to spine, to regulate pressure to openings in the spine.

"13. Twisting State's witness neck.

"14. Moving circular pronged instrument on State's witness spine.

"15. Using words, letters and titles in connection with name, to wit: 'D. C.', 'Ph. C.', and 'M. C.'

"16. Using State paid witnesses to gather evidence.

"17. Refusing on demand for particulars to disclose names and addresses of the State's witnesses before trial."

regulation of the practice of medicine and the allied sciences; and to enforce either the statutes of the state or regulations of the administrative agency. Dent v. West Virginia, 129 U.S. 114, 9 S.Ct. 231, 32 L. Ed. 623; Gray v. Connecticut, 159 U.S. 74, 15 S.Ct. 985, 40 L.Ed. 80; Hawker v. People of New York, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002; Roetz v. Michigan, 188 U.S. 505, 23 S.Ct. 390, 47 L.Ed. 563; Meffert v. Packer, 195 U.S. 625, 25 S.Ct. 790, 49 L.Ed. 350; Williams v. Arkansas, 217 U.S. 79, 30 S.Ct. 493, 54 L.Ed. 673; Watson v. Maryland, 218 U.S. 173, 30 S.Ct. 218, 54 L.Ed. 987; Collins v. Texas, 223 U.S. 288, 32 S.Ct. 286, 56 L.Ed. 439; McNaughton v. Johnson, 242 U.S. 344, 37 S.Ct. 178, 61 L.Ed. 352, Ann.Cas. 1917B, 801; Crane v. Johnson, 242 U.S. 339, 37 S.Ct. 176, 61 L.Ed. 348, Ann.Cas. 1917B, 796; Noble v. Douglas, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590; State of Missouri ex rel. Hurwitz v. North et al., 271 U.S. 40, 46 S.Ct. 384, 70 L.Ed. 818; Graves v. Minnesota, 272 U.S. 425, 47 S. Ct. 122, 71 L.Ed. 331; Lambert v. Yellowley, 272 U.S. 581, 47 S.Ct. 210, 71 L.Ed. 422, 49 A.L.R. 575; Fife v. Louisiana State Board of Medical Examiners, 274 U.S. 720, 47 S.Ct. 590, 71 L.Ed. 1324; [4] Dr. Bloom, Dentist, v. Cruise, 288 U.S. 588, 53 S.Ct. 320, 77 L.Ed. 967; Semler v. Oregon State Board of Medical Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086.

Plaintiff, Blass, argued, however, that the statutes under which he was tried in the state court, N.J.S.A. 45:9–18, 22, 23, are unconstitutional because they fail to inform the accused of the nature and the cause of the charge or offense by specifying which one or more of the various methods listed in N.J.S.A. 45:9–18 [5] has been violated, nor do they provide for naming the person or persons upon whom the accused is alleged to have practiced medicine. Plaintiffs charge that when the New Jersey Medical Act provides that "such process shall state what provision or provisions of the law are alleged to have been violated by the defendant", N.J.S.A. 45:9–22, the act is deficient because under the Fourteenth Amendment of the Federal Constitution they must be informed of the specific acts alleged to constitute violations of the law rather than in charges alleging the general violation of sections of the statute. The plaintiffs further complain of the alleged inadequacy of N.J.S.A. 45:9–23 where it is provided that "the court shall proceed in a summary manner, without a jury, to hear testimony and to determine and give judgment in the matter without the filng of any pleadings of the plaintiff for the recovery of such penalty, with costs, or for the defendant. * * *" These complaints reduce themselves to an attack upon the former [6] procedural methods of enforcement of the Medical Prac-

[4] This decision and the preceding cases were considered by the New Jersey Supreme Court in sustaining the constitutionality of the Medical Practice Act, State Board of Medical Examiners v. Grossman, 134 N.J.L. 401, 406, 48 A.2d 700.

[5] "Any person shall be regarded as practicing medicine and surgery, within the meaning of this chapter, who shall use the words or letters 'Dr.', 'doctor', 'professor', 'M. D.', or 'M. B.' in connection with his name, or any other title intending to imply or designate him as a practitioner of medicine or surgery in any of its branches, and who, in connection with such title or titles, or without the use of such titles, or any of them, holds himself out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, or who shall either offer or undertake by any means or methods to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition. The provisions of this chapter shall apply to all persons professing and attempting to cure disease by means of the so-called system of 'faithcurism', 'mindhealing', 'laying-on-of-hands', and other similar systems." N.J.S.A. 45:9–18.

[6] Effective September 15, 1948, a revision of the civil and criminal practice of the State of New Jersey was published in accordance with the 1947 Constitution of New Jersey. The rules governing practice in the County District Courts and Municipal Courts were promulgated effective January 1, 1949. In view of these changes, the procedural aspects of N.J.S.A. 45:9–23 have been altered.

tice Act of New Jersey. It has long been recognized constitutional doctrine that a state is not limited in the civil and criminal procedures to be followed by its courts. It may dispense with trial by jury, indictment by grand jury, exercise no positive bar against the self incrimination rule, et cetera, in line with the doctrine that the Fourth, Fifth, Sixth and Seventh Amendments to the United States Constitution are inapplicable to the respective states. Hurtado v. California, 110 U.S. 516, 4 S. Ct. 111, 28 L.Ed. 232; Gaines v. Washington, 277 U.S. 81, 48 S.Ct. 468, 72 L.Ed. 793; Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288; Adamson v. California, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903, 171 A.L.R. 1223. Every alleged defect or deprivation enunciated by the plaintiffs in the procedure of the defendants under the New Jersey law is met by the foregoing decisions of the Supreme Court.

Little has been offered by the plaintiffs in this case that was not considered and disposed of in the case of New Jersey Chiropractic Association v. State Board of Medical Examiners, D.C., 79 F.Supp. 327. It is apparent that the constitutional issues raised by these plaintiffs are as equally without merit as were the contentions of the plaintiffs in the Chiropractic case for they lack substance and have been foreclosed by prior decisions of the United States Supreme Court as hereinabove set forth. No jurisdiction exists, therefore, for invoking the procedure outlined in 28 U.S.C.A. § 2281 et seq. and the motion to stay state court proceedings will be denied. Ex parte Poresky, supra; California Water Service Co. v. City of Redding, supra; Jameson Co. v. Morgenthau, supra; Beal v. Missouri Pacific R. Corp., 312 U.S. 45, 49–50, 61 S.Ct. 418, 85 L.Ed. 577; Douglas v. City of Jeanette, 319 U.S. 157, 164, 63 S.Ct. 882, 87 L.Ed. 1324, 146 A.L.R. 81.

There remain those allegations by the corporate plaintiff, E. Am. Association for Oxygen-Therapy, Incorporated, and the individual plaintiff, Blass, pertaining to alleged violations of the Civil Rights Act, 8 U.S.C.A. § 43 wherein the defendants are alleged to have violated Article IV, § 2, and the First, Fifth, Sixth, Seventh, Thirteenth and Fourteenth Amendments to the United States Constitution. Since natural persons only are entitled to sue for violation of the privileges and immunities which § 1 of the Fourteenth Amendment secures for citizens of the United States, the corporate plaintiff, E. Am. Association, is without a cause of action here and its complaints must be dismissed. Hague v. C. I. O., 307 U.S. 496, 514, 59 S.Ct. 954, 83 L.Ed. 1423; Slaughter House Cases, 16 Wall. 16, 21 L.Ed. 394.

Article IV, § 2 of the Constitution is limited to circumstances wherein diversity of citizenship exists, a condition totally absent here. Hague v. C. I. O., 307 U.S. 496, 511, 59 S.Ct. 954, 83 L.Ed. 1423.

There have been a number of decisions within the last few years wherein consideration has been given to the extent to which the Bill of Rights, by virtue of the provisions of the Fourteenth Amendment, applies to the individual states. However, with the exception of the First Amendment, the Supreme Court has refused to hold that the Fourteenth Amendment secures against state invasion the rights, privileges and immunities protected from federal violation by the Bill of Rights. Adamson v. California, supra; Palko v. Connecticut, supra; Foster v. Illinois, 332 U.S. 134, 67 S.Ct. 1716, 91 L.Ed. 1955; Malinski v. New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; Hague v. C. I. O., supra. But compare Leon Johnson, alias Robert McMillan v. Dye, Warden, 3 Cir., 1949, 175 F.2d 250.

The Thirteenth Amendment has no application to a situation where a person is held to answer for violations of a penal statute. Slaughter House Cases, supra Cf. Lindsey v. Leavey, 149 F.2d 899, 9 Cir., certiorari denied 326 U.S. 873, 66 S. Ct. 331, 90 L.Ed. 474.

When these principles are applied to the instant case, the allegations of plaintiff, Blass, concerning Article IV, § 2, the Fifth, Sixth, Seventh and Thirteenth

Amendments, fail to state a cause of action.

■ The allegations concerning the First Amendment are based upon plaintiff Blass' contention that the acts of the defendants in enforcing the Medical Practice Act prevent him from disseminating information concerning the science of naturopathy. Although the rights granted by the First Amendment are protected from encroachment by the respective states by the provisions of the Fourteenth Amendment, Hague v. C. I. O., supra, the right is not absolute and will not cloak him "with immunity from the legal consequences for concomitant acts committed in violation of a valid criminal statute." Chaplinsky v. New Hampshire, 315 U.S. 568, 571, 62 S.Ct. 766, 769, 86 L.Ed. 1031. It is admitted that the alleged acts of the defendants have been executed under color of state law. Cf. Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495, 162 A.L.R. 1330. But to constitute a violation over which this court is required to exercise jurisdiction, the acts of state officials must have been in violation of federal law. The alleged violation of the First Amendment is based upon the fact that in prosecuting the violation of the Medical Practice Act, plaintiff, Blass, was silenced by the in torrorem effect of the state action. Unless, therefore, the defendants acted outside the limits of the authority vested in them by law, no violation of a federal right has occurred. Cf. Picking v. Pennsylvania R. Co., 3 Cir., 151 F.2d 240, 248.

The State of New Jersey has provided for a comprehensive scheme whereby the practice of medicine is regulated by the defendant, State Board of Medical Examiners, N.J.S.A. 45:9–1 et seq. Plaintiff, Blass, was accused of having violated these regulations and statutes and, in conformity to the procedure provided in N.J.S.A. 45:9–22, 23, suit was instituted against him. He complained that the information under which he was tried failed to inform him as to the nature of the offense, that he was denied this information upon his demand for a bill of particulars, and that the information upon which his accusation and conviction were based was obtained by anonymous and professional informants. No appeal was taken from the action of the District Court to the appellate courts of New Jersey whereby any alleged invalidity in the accusation, trial and judgment could have been tested to determine whether errors had been committed under the then current New Jersey practice. Rather, he has filed this complaint seeking to enjoin the enforcement of a state court judgment and in essence has sought to convert this court into an appellate forum to pass upon matters of state court trial procedure. Cf. United States ex rel. Steele v. Jackson, 2 Cir., 171 F.2d 432, 433.

The language of the United States Supreme Court in Douglas v. City of Jeannette, 319 U.S. 157, 163–164, 63 S.Ct. 877, 881, 87 L.Ed. 1324, 146 A.L.R. 81, appears to be strikingly dispositive of the contentions of the plaintiff, Blass. It says therein:

"It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunciton. [Cases cited.] Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate.' [Cases cited.]

\* \* \* \* \* \*

"It does not appear from the record that petitioners have been threatened with any

injury other than that incidental to every criminal proceeding brought lawfully and in good faith, or that a federal court of equity by withdrawing the determination of guilt from the state courts could rightly afford petitioners any protection which they could not secure by prompt trial and appeal pursued to this Court."

Cf. Beal v. Missouri Pacific R. Co., 312 U.S. 45, 49–50, 61 S.Ct. 418, 85 L.Ed. 577; Snowden v. Hughes, 321 U.S. 1, 11–12, 64 S.Ct. 397, 88 L.Ed. 497.

There is a complete failure upon the part of the plaintiff to show in his complaint that the defendants have performed any act involving him other than those required of them by the Medical Practice Act of the State of New Jersey or that they have violated under color of state law any right secured for him by the federal constitution.

Where it appears to be a certainty that a plaintiff would be entitled to no relief under any state of facts which could be proved in support of a claim, the complaint should be dismissed. De Loach v. Crowley's Inc., 5 Cir., 128 F.2d 378, 380; Continental Colleries v. Shober, 3 Cir., 130 F.2d 631, 635. Measured by this test, the complaint fails to aver a cause of action under the Civil Rights Act, 8 U.S.C.A. § 43. The plaintiff is not entitled to relief either by way of injunction or damages against the defendants and this section of his complaint must likewise be dismissed.