Velma L. MENGELKOCH, Mary Fazzio, and Dea C. Kaskela, as citizens of the United States and of the State of California on their own behalf and on behalf of all other citizens of the State of California similarly situated, Plaintiffs,

v.

INDUSTRIAL WELFARE COMMIS-SION, and North American Aviation, Inc., a corporation, Defendants.

Civ. No. 66–1618–S.

United States District Court
C. D. California.

May 10, 1968.

See also D.C., 284 F.Supp. 956.

Phill Silver, Hollywood, Cal., and Philip Poppler, Long Beach, Cal., subsequently, Evelyn E. Whitlow, Los Angeles, was substituted as counsel for plaintiff Velma L. Mengelkoch.

Thomas C. Lynch, Atty. Gen., B. Franklin Walker, Jr. and William L. Zessar, Deputy Attys. Gen., for defendants Industrial Welfare Commission and Division of Industrial Welfare.

Gibson, Dunn & Crutcher, Los Angeles, for defendant North American Aviation, Inc.

## OPINION AND ORDER ON MOTION TO DISSOLVE THREE-JUDGE COURT

Before JERTBERG, Circuit Judge, and STEPHENS and GRAY, District Judges.

STEPHENS, District Judge.

This is an action brought for declaratory and other appropriate relief pursuant to the Civil Rights Act of 1964.

Plaintiffs, three female employees of defendant North American Aviation, Inc., are suing to have Section 1350 of the California Labor Code (a maximum hours for women law), declared unconstitutional as violating the Equal Protection Clause of the 14th Amendment to the Constitution of the United States, or invalid as conflicting with Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e–7]. Plaintiffs, suing in their own behalf and purportedly in behalf of all similarly situated women in the State of California, seek to enjoin defendants California Industrial Welfare Commission and the California Division of Industrial Welfare from enforcing § 1350, C.L.C. and to enjoin defendant North American from further violations of Title VII of the Civil Rights Act.

Plaintiffs requested that a three-judge court be convened to hear and determine the case pursuant to Title 28 U. S.C. § 2281 and § 2284. A three-judge court was appointed and convened. Defendants Division of Industrial Welfare and the Industrial Welfare Commission filed a motion to dismiss.[1] Defendants' motion seeks three separate kinds of relief: (1) to dissolve the three-judge court; (2) to dismiss the complaint as against them on the ground that, as state agencies, they are immune from suit; and (3) to dismiss the action on the ground that the court, in the exercise of its discretion, should abstain from adjudicating the merits of this case.

## STATEMENT OF THE ISSUES.

The ultimate merits of plaintiffs' claims are not now before the court. Nevertheless, it is appropriate to briefly mention the substance of the laws in issue. Section 1350 of the California Labor Code prohibits the working of females in certain employments for more than eight hours a day or forty-eight hours a week. Since the institution of this action, this section was amended to provide an exception to its terms pursuant to section numbered 1350.5 which was added in 1967. Where applicable this new section authorizes the employment of women up to ten hours per day and provides for overtime pay. In 1967 a new section numbered 1357 was added.

There are two distinct issues, one relating to the Equal Protection Clause

---

1. Defendant North American has not joined in the motion to dismiss. A stipulation has been entered into giving North American time to plead after the disposition of the motion to dismiss.

and the other to Title VII of the Civil Rights Act of 1964.

*Issue No. 1*

Section 1350 is said to violate the Equal Protection Clause of the 14th Amendment. In general, the Equal Protection Clause prohibits unreasonable classifications in state laws, including classifications based upon sex. The question is one of the reasonableness of the classification made in the state regulatory statute.

*Issue No. 2*

■ Section 1350 is said to be in conflict with Title VII of the Civil Rights Act of 1964. The Supremacy Clause of the Constitution dictates that a state statute which conflicts with a valid federal statute cannot stand. The federal statute, Title VII, prohibits an employer from discriminating against an employee with respect to compensation, terms, conditions, or privileges of employment based upon, inter alia, that employee's sex. It also prohibits an employer from limiting, segregating or classifying his employees in any way which would deprive them of employment opportunities or otherwise adversely affect their status as employees because of their sex. 42 U.S.C. § 2000e–2(a). There is no "savings clause" for state protective laws for women in Title VII. However, Title VII does provide that an employer does not have to comply with a state statute requiring him to do acts which Title VII makes unlawful.

■ Plaintiffs claim that a state law which forbids an employer from allowing women to work overtime at premium pay compels discrimination with respect to compensation and privileges of employment by reason of their sex. The question is whether the state law conflicts or is inconsistent with the federal law. If it does, the federal law prevails.[2]

## PROPRIETY OF A THREE-JUDGE COURT.

Section 2281 provides for a three-judge court where an injunction is sought restraining the enforcement of a state statute upon the ground that it is unconstitutional. Section 2281 provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or any order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof *upon the ground of unconstitutionality of such statute* unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title." (Italics supplied.)

A. *Substantial Constitutional Issue*

■■ It has been consistently held that a *substantial* constitutional question must be raised in order to invoke a three-judge court. California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). Lack of substantiality of the constitutional issue may exist because prior Supreme Court decisions make clear that it is without merit. California Water Service Co. v. City of Redding, supra; Ger-

---

**2.** There is a time-honored rule of constitutional adjudication that the court will not pass upon a constitutional question if there is some other ground upon which the case may be disposed of. In other words, the court will not reach the merits of the constitutional issue when a decision on some lesser ground renders it unnecessary. Kent v. Dulles, 357 U.S. 116 at 129, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958); Ashwander v. TVA, 297 U.S. 288 at 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936). Accordingly, the court should pass upon the merits of the federal-state conflict issue before reaching the Equal Protection issue. If it is held that the state law is in conflict with the federal law, it will be unnecessary to pass upon the Equal Protection issue. Boynton v. Com. of Virginia, 364 U.S. 454, 457, 81 S.Ct. 182, 5 L.Ed.2d 206 (1960).

man v. South Carolina State Ports Authority, 295 F.2d 491 (4th Cir., 1961); People of State of Ill. ex rel. Sankstone v. Jarecki, 116 F.Supp. 422 (D.C.Ill., 1953); appeal dismissed 346 U.S. 861, 74 S.Ct. 107, 98 L.Ed. 373; Bradley v. Waterfront Commission of New York Harbor, 130 F.Supp. 303 (D.C.N.Y., 1955); Blass v. Weigel, 85 F.Supp. 775 (D.C.N.J.,1949). The insubstantiality is especially apparent when previous decisions of the Supreme Court have specifically upheld the state statute in question against attack on constitutional grounds. German v. South Carolina State Ports Authority, supra.

The first issue raised by plaintiffs is that Section 1350 is unconstitutional as a denial of "equal protection of the laws." (See, Complaint ¶ XXIV) The constitutionality of Section 1350 [3] was challenged in Matter of Application of Miller, 162 Cal. 687, 124 P. 427 (1912) and Miller v. Wilson, 236 U.S. 373, 35 S.Ct. 342, 59 L.Ed. 628 (1915) as a deprivation of liberty to contract and a denial of equal protection. The Supreme Court held that the California statute was constitutional. The statute was found to be a reasonable regulation by the state to safeguard the public health. In so holding, the court regarded its prior decisions upholding other state maximum hours for women laws as decisive.

In *Miller,* the court quoted at length from the landmark case, Muller v. State of Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908), the first Supreme Court case to uphold the constitutionality of a state maximum hours law. Cf. Lochner v. State of New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). In *Muller,* the validity of an Oregon law limiting the hours of labor of females was attacked on constitutional grounds. The constitutionality of the statute was sustained.

The decision was based upon considerations relating to woman's physical structure, her maternal functions, and the vital importance of her protection in order to preserve the strength and vigor of the race. "She is properly placed in a class by herself," the court stated (28 S.Ct. at 326–327), "and legislation designed for her protection may be sustained, even when like legislation is not necessary for men, and could not be sustained. * * * Even though all restrictions on political, personal, and contractual rights were taken away, and she stood, so far as statutes are concerned, upon an absolutely equal plane with him [man], it would still be true that she is so constituted that she will rest upon and look to him for protection; that her physical structure and a proper discharge of her maternal functions—having in view not merely her own health, but the well-being of the race—justify legislation to protect her from the greed as well as [the] passion of man. The limitations which this statute places upon her contractual powers, upon her right to agree with her employer as to the time she shall labor, are not imposed solely for her benefit, but also largely for the benefit of all. Many words cannot make this plainer. The two sexes differ in structure of body, in the functions to be performed by each, in the amount of physical strength, in the capacity for long-continued labor, particularly when done standing, the influence of vigorous health upon the future well-being of the race, the self-reliance which enables one to assert full rights, and in the [capacity to maintain the] struggle for subsistence. This difference justifies a difference in legislation * * *.'"

Suffice it to say that the Supreme Court has passed upon and rejected the contention that state maximum hours for women laws violate the Equal Pro-

---

3. The California maximum hours for women statute has been amended to add a few additional types of employments. Stats.1939, c. 1072, p. 2297, § 1 and in 1967 as noted in the text of this opin-

ion. However, it is derived from and is substantially the same as its statutory antecedent challenged in Miller v. Wilson, supra. Stats. II 1911, c. 258, p. 437, § 1.

tection Clause. The restriction on working hours which such statutes impose on women, as a special class, has been held to be a reasonable one. Muller v. Oregon, followed in Miller v. Wilson, is still the law as declared by the Supreme Court. There have been no intervening decisions of the court in cases which are closely analogous which would lead to the conclusion that the basic rationale of these cases has been discarded or even seriously eroded.

But plaintiffs contend that times have changed and so should the law.

These decisions were handed down nearly sixty years ago. The *Muller-Miller* rationale was based on medical data available at that time.[4] There are notions expressed in the opinions which may no longer be viable in view of the role of women in today's society. In *Muller*, the Supreme Court stated (28 S.Ct. at 326):

" * * * History discloses the fact that woman has always been dependent upon man." What seemed so clear to the court in 1908 is not so clear in light of contemporary American society. In view of the increased percentage of women in the work force and as heads of households, the absolute dependency of woman on man, so obvious in the 19th century, is not so apparent today. Since the time of the *Muller* decision, women have obtained the right to vote. (The 19th Amendment became effective on August 26, 1920.)

In general, women have achieved a larger degree of contractual, personal and political rights equal with men. Nearly all of woman's civil disabilities have been removed. In the 19th century she was viewed as physically, socially and economically inferior to man. The laws buttressed this view. In the eyes of the law today, she is man's equal and to be accorded the same rights and privileges as her male counterpart.

It is argued that women's maternal function is less time-consuming than it was at the turn of the century. The average woman has fewer children today. (The average American family has less than two children—approximately 1.7 children per family.) There is a far greater number of women working today. (Women comprise 30% of the nation's work force.) A substantial number of women are heads of households.

In addition, it is argued that the economic conditions giving rise to the maximum hours legislation no longer prevail or, to the extent that they still exist, they can be regulated by premium pay for overtime laws which do not distinguish as to sex. In sum, the plaintiffs are contending that maximum hours for women laws are unreasonable in light of the changes in the conditions and functions of women in today's society.

On the other hand, this may depend upon the character of the employment. The classification of women as a group needing some particular protection of the law may still be reasonable for many purposes. It has also been pointed out that the abandonment of limitations on working hours for women would place women on an equal basis with men in the matter of overtime pay, but at the same time would also make them subject to the obligation to perform as much overtime work as required of men. This is a mixed blessing. It is not a matter of letting women earn overtime when they want to, but an obligation to work overtime whether they want to or not on pain of being discharged. This could result in women being squeezed out of certain industrial work rather than broadening the employment base and opportunity for women in industry. It is not so certain as plaintiffs assume that their

---

4. It was in Muller v. Oregon that Louis Brandeis, representing the State of Oregon, submitted his famed brief containing medical and socio-economic data tending to establish the reasonableness of the state's classification by sex to protect the female of the human species. In *Muller*, the court took into account medical opinions of the day to the effect that long hours were injurious to the health of females and adversely affected their procreative functions.

position represents the will of many other women, even if similarly situated.

Plaintiffs have not distinguished the issue presented from the one presented in Muller v. Oregon, supra. The principle of *stare decisis* must ultimately control the decision at the district court level. A Supreme Court decision is as binding as statutory law. The district court, even sitting as a three-judge tribunal, cannot reverse the Supreme Court. When the law has developed through intervening decisions to the point that it has become clear that the Supreme Court has abandoned the reasoning which gave rise to an earlier decision and that the law has in fact changed and all that is needed is recognition, then an inferior court should recognize what is obvious and act accordingly. However, there has been no line of decisions which cast doubt upon the basic holding of *Muller*. Therefore, this case does not present a substantial constitutional issue. Mere speculation as to what the Supreme Court might do in the light of the changed circumstances will not suffice to take this issue out of the insubstantial category.

B. *Supremacy Clause: Federal-State Statutory Conflict*

Plaintiffs contend that, if section 1350 does not violate the Equal Protection Clause, it is nevertheless invalid in that it conflicts with a federal statute, viz., Title VII of the 1964 Civil Rights Act. It is a well-established axiom of constitutional law that the Supremacy Clause operates to invalidate a state law in conflict with (or in an area preempted by) a valid federal law. Gibbons v. Ogden, 9 Wheat. 1, 6 L.Ed. 23 (1820); Com. of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640 (1956). In this sense, the claimed invalidity of a state law conflicting with a federal law is premised on a provision of the Constitution.

Nevertheless, the Supreme Court has held that the three-judge court requirement of 28 U.S.C. § 2281 applies only to actions which rely upon substantive provisions of the Constitution, e. g., the First Amendment, the Due Process or Equal Protection Clauses, the Commerce Clause, etc., to support the claimed invalidity of the state statute. (As discussed above, a substantial issue must be raised with respect to the constitutionality of the state law under a substantive constitutional provision.) But 28 U.S.C. § 2281 does not apply to Supremacy Clause issues involving, as they do, only a federal-state statutory conflict. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

In *Swift*, the Supreme Court examined the legislative purpose in enacting the provisions conferring jurisdiction on three-judge courts. 28 U.S.C. §§ 2281-2284. These provisions were designed to obtain a more responsible and authoritative tribunal for the litigation of suits attacking the constitutionality of a state law. By providing for direct review by the Supreme Court, 28 U.S.C. § 1253, a final determination on the merits is expedited.

However, the court observed that cases arising under the Supremacy Clause involved the construction of state and federal laws rather than an interpretation of a substantive provision of the Constitution. In essence, the constitutionality of the state law is not challenged. Under the *Swift* doctrine, there is no jurisdiction for a three-judge court where the claim of invalidity is grounded in the Supremacy Clause.

C. *Civil Rights Act of 1964*

Plaintiffs contend that they are entitled to invoke a three-judge court by virtue of a provision in Title VII of the Civil Rights Act. See 42 U.S.C. § 2000e-6(b). This provision confers jurisdiction upon the district courts over actions brought for a violation of Title VII. It also permits the Attorney General of the United States to request a three-judge court in an action where he certifies that the case is of general public importance. In the event the Attorney General does not file such a request,

the action is to be heard and determined by a single judge.

It is obvious that only the Attorney General has the authority to invoke a three-judge court under this provision. The Attorney General has not seen fit to do so in this case. There is no provision in Title VII giving an individual litigant the right to have an action adjudicated by a three-judge court.

In sum, there is no jurisdiction for a three-judge court. Plaintiffs have failed to raise a substantial constitutional issue under the Equal Protection Clause. There is no jurisdiction for a three-judge court on a claim of invalidity grounded in the Supremacy Clause. Moreover, plaintiffs are not entitled to invoke a three-judge court under any provision of the Civil Rights Act itself. A three-judge court is not appropriate in this case.

It is hereby ordered that defendants' motion to dissolve the three-judge court be and the same is hereby granted.