Paul R. BAILLEAUX

v.

Robert D. HOLMES, Governor of the State of Oregon, Mark O. Hatfield, Secretary of State of Oregon, and Sig Unander, State Treasurer of Oregon, constituting the Oregon State Board of Control, Clarence T. Gladden, Warden of the Oregon State Penitentiary, and Lewis R. Barnes, Deputy Warden of the Oregon State Penitentiary.

Harry HANDRON

v.

Robert D. HOLMES, Governor of the State of Oregon, et al.

Richard E. WILLIAMS

v.

Robert D. HOLMES, Governor of the State of Oregon, et al.

James Quinten ANDERSON

v.

Robert D. HOLMES, Governor of the State of Oregon, et al.

Earl SHERWOOD

v.

Robert D. HOLMES, Governor of the State of Oregon, et al.

George R. BARBER

v.

Robert D. HOLMES, Governor of the State of Oregon, et al.

Andrew TAYLOR

v.

Robert D. HOLMES, Governor of the State of Oregon, et al.

Civ. Nos. 9831–9834, 9847, 9861, 9862.

United States District Court
D. Oregon.
Oct. 2, 1959.

Louise Jayne, William E. Love, Portland, Or., Richard W. Sabin, Cecil H. Johnson, Salem, Or., for plaintiffs.

Robert Y. Thornton, Atty. Gen. of Oregon, Peter S. Herman, Lloyd G. Hammel, Asst. Attys. Gen., for defendants.

John H. Buttler, Portland, Or., amicus curiae on behalf of American Civil Liberties Union of Oregon

SOLOMON, Chief Judge.

Plaintiffs are prisoners in the Oregon State Penitentiary at Salem, Oregon. Defendants are the Governor, Secretary of State, and the State Treasurer, comprising the State Board of Control, and the Warden and Deputy Warden of the penitentiary.

Each of the plaintiffs asserts either that he is illegally confined or that he must defend criminal charges pending against him in state or federal courts, that he is required to do all or part of the legal preparation himself because he cannot afford to engage an attorney, and that these matters require his immediate attention. Plaintiffs further allege that they are being unlawfully denied full access to the courts by the imposition of excessive restrictions on law study and preparation of legal documents. They bring this action under the Civil Rights Act, 28 U.S.C.A. § 1343, 42 U.S.C.A. § 1983, providing for redress of deprivation of civil rights by persons acting under color of state law.

In their amended and consolidated complaint they allege that the defendants in their official capacities have conspired to prevent plaintiffs from exercising their constitutional right to free and speedy access to the courts. Plaintiffs claim that the following restraints, among others, are unreasonable and unlawful: (1) Prisoners may not study law or prepare legal documents in their cells; they must do this work in a prison law library open only to a limited number of prisoners for limited periods of time; (2) prisoners are severely restricted in their ability to purchase or receive law books or statutes, even though they are not available in the prison library; (3) defendants impose special censorship on legal documents and communications with courts and attorneys; (4) defendants confiscate legal documents found in prisoners' possession outside the library; (5) prisoners in isolation are denied all access to the courts, counsel, and their legal papers; (6) prisoners may not use all of their funds to purchase legal materials or pay legal fees.

The complaint requests relief from these restrictions for themselves and for others similarly situated.

Defendants deny the allegations of conspiracy. They admit most of the specific restrictions, but they assert that such restrictions are not unlawful because they are reasonable and necessary. Defendants further assert that these restrictions do not substantially curtail plaintiffs' opportunities to be heard in the courts.

At the trial all of the plaintiffs and all of the defendants testified in person. At the conclusion of the testimony, the Court found that the plaintiffs had not proved the existence of any conspiracy and that other issues set forth in the pleadings which relate to typing, mailing and notarization privileges, and isolated instances in which prisoners were denied

use of materials either were not proved or did not raise any issue cognizable in this Court as a violation of constitutional rights.

The Attorney General suggests that the recently-enacted "Post-Conviction Hearing Act", Oregon Laws 1959, c. 636, which provides for legal assistance to indigent prisoners will cure or make moot the evils of which the plaintiffs complain. This humane and admirable legislation will solve the problems of those plaintiffs who have matters in the Oregon courts. However, the Act neither purports to nor does it relate to proceedings in the federal courts or in the courts of states other than Oregon. Likewise prisoners may if they desire represent themselves. Even though some of these issues are no longer applicable to some plaintiffs, they are applicable to others, and we are therefore answering all of them.

### Limitations on Law Study

Present regulations require that law study and the preparation of legal papers be confined to the law library. The library is open approximately thirty hours a week, during which time a limited number of prisoners, by appointment, are permitted to work on legal matters. No prisoner in the general population is permitted to study law or keep any legal documents or memoranda in his cell. Prior to the commencement of this action only four prisoners could use the facilities of the law library concurrently. Subsequently the number was increased to eleven. In the past prisoners had often been delayed for several days, and occasional delays still occur. Prisoners employed in special jobs are further restricted when library periods coincide with their work schedules. Absence from work to pursue legal matters may result in an unfavorable report which, in turn, reduces a prisoner's "good time".

Most prisoners spend fourteen hours a day in their cells. Prisoners may keep a limited quantity of study materials, as well as books, magazines, courses including correspondence courses, and personal papers.

Plaintiffs need more time than they are presently afforded to prepare their legal matters adequately. With no legal training, many are forced to represent themselves under conditions which an experienced attorney would find intolerable. Prison officials insist that these restrictions are required to curb the activities of the "cell-house lawyers", and to avoid the storage problem resulting from accumulation of legal materials in the cells.

The Court appreciates the fact that prison authorities must maintain effective discipline, and must prevent unscrupulous prisoners from preying on the weak and ignorant. However, this end may not be achieved by stifling the study of law, where such study is necessary to the effective utilization of a basic right. This does not mean that the prison authorities are powerless to prevent the accumulation of massive legal libraries in the cells. Regulations can be designed to avoid the excessive storage of materials in cells without restricting the actual use of these materials in the cells when needed.

### Restrictions on Law Books

The prison law library has one or two volumes of Corpus Juris Secundum and a copy of the criminal sections of the Oregon Revised Statutes. Prisoners may not purchase or receive from outside sources any treatises or statutes. They may not even acquire copies of individual cases from any source other than the publisher. These are expensive and not always available.

The prisoners contend that these restrictions prevent them from adequately representing themselves both at trial and on appeal. Prisoners have the right to represent themselves and, an indigent prisoner who is required or elects to represent himself should, so far as possible, have the same opportunities to prepare his case as one represented by an attorney. Without law books, a competent and experienced lawyer would find

it difficult to prepare a defense or an appeal. Without such books, a prisoner, without legal training or experience, finds it virtually impossible.

■ Prison officials contend that to permit prisoners to purchase law books would add to their burden of censoring incoming mail, and create a space problem. If law books are necessary to due process, these considerations are immaterial. Judge Medina, noting the inconvenience caused by the flood of habeas corpus petitions nevertheless stated, "We must not play fast and loose with basic constitutional rights in the interest of administrative efficiency." United States ex rel. Marcial v. Fay, 2 Cir., 247 F.2d 662, 669, affirmed 355 U.S. 915, 78 S.Ct. 342, 2 L.Ed.2d 274. This principle is equally applicable here.

Defendants rely upon Piccoli v. Board of Trustees and Warden, D.C.N.Hamp. 1949, 87 F.Supp. 672. In that case, the Court held that the refusal of prison officials to permit a prisoner to possess a set of New Hampshire statutes was not a deprivation of the prisoner's rights of freedom of speech and of the press serious enough to warrant the extraordinary remedy of injunction. The opinion did not consider the relation between possession of law books and the right of a prisoner to have access to the courts. However, insofar as that opinion may indicate a belief that prisoners can have no right to the possession of law books, we disagree.

The Court is satisfied that adequate access to legal materials can only be achieved through the termination of regulation which distinguishes between the acquisition of legal materials and other printed matter.

## Censorship of Legal Communications

The prisoners contend that their communications to and from attorneys and courts are subject to special inspection and censorship and that such communications, including documents intended to be filed in court, are delayed longer than are reasonably necessary for inspection.

■ The Court recognizes that the opening and inspection of mail between prisoners and those at liberty is an essential incident to the safe custody of prisoners, particularly in the suppression of traffic in contraband. Letters between prisoners and their attorneys are not exempt from this type of control. Green v. State of Maine, D.C.Me.1953, 113 F.Supp. 253; United States ex rel. Vraniak v. Randolph, D.C.Ill.1958, 161 F.Supp. 553.

However, the right to inspect should not be used unnecessarily to delay communications to attorneys or the courts since such delay could amount to an effective denial of a prisoner's right to access to the courts. Likewise, the right to inspect and censor does not give prison authorities the right to pass upon the sufficiency of legal pleadings. Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L. Ed. 1034.

## Confiscation of Legal Documents

Prison officials confiscate and retain as contraband prisoners' legal documents, including petitions addressed to courts, discovered outside the prison library.

■ Defendants argue that prisoners have no right to possess personal property. They assert that property possessed in violation of regulations must be confiscated if discipline is to be maintained.

The right to be protected is not a property right; it is the right to be heard in the courts. Prison officials may not enforce rules which suppress papers directed to the courts. Dowd v. U. S. ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215; Ex parte Hull, supra. That is precisely the effect of the present regulation.

Prison officials may and should regulate the conduct of prisoners and punish the violation of regulations. However, we do not believe that a communication or a pleading addressed to an attorney or court relative to a pending or contemplated legal action is subject to confiscation solely because it was prepared in a cell rather than in the library.

## Prisoners in Isolation

Prisoners in isolation may not initiate court action, communicate with counsel, or have access to legal materials.

Isolation is a traditional and effective method of punishment. No evidence was presented to indicate that isolation was imposed discriminately upon prisoners engaged in legal work. In addition, granting prisoners the right to contact courts and attorneys, and to use legal materials will probably impair the efficacy of isolation as punishment. Nevertheless, administrative control, even if reasonable and moderate, must yield to the basic right to have access to the courts.

## Restriction of Prisoners' Funds

Prisoners complain that they are not permitted to use all of their funds to buy legal books, transcripts, and materials, or to pay legal fees.

The Warden asserts that Oregon Law requires him to hold part of the prisoner's money, from any source, to provide a small reservoir of cash for the prisoner upon release. The prison regulation which requires the segregation of 25% of a prisoner's funds in a savings account is directly authorized by ORS 421.125(5):

> "The warden shall safeguard the moneys standing to the credit of each individual convict, whether such moneys are from outside sources or from earnings of the convict while in the penitentiary, to the end that in so far as possible the convict will have at least $50 to his credit on discharge, or at least $25 to his credit on parole."

In our view both the statute and the regulation are reasonable and do not infringe plaintiffs' constitutional rights.

The Court wishes to express its gratitude to all counsel for their painstaking and exhaustive efforts in connection with the many issues involved in these proceedings. We are particularly grateful to Louise Jayne, Richard W. Sabin, Cecil H. Johnson and William E. Love, all of whom were court appointed and served without compensation at great personal sacrifice. The amicus curiae brief submitted by the American Civil Liberties Union of Oregon was of its usual high quality.