Robert DRAPER, Appellant,

v.

B. J. RHAY, as Superintendent of Washington State Penitentiary, Appellee.

No. 18242.

United States Court of Appeals
Ninth Circuit.

Feb. 28, 1963.

Robert Draper, in pro. per.

No appearance for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and MADDEN, Judge of the United States Court of Claims.

BARNES, Circuit Judge.

This "appeal" presents more than the usual number of complications present when a layman attempts to appeal and act as his own attorney.

Appellant filed a complaint on December 15, 1961, alleging that appellee Rhay had deprived him, Robert Draper, a state prisoner serving two consecutive terms for robbery, of his civil rights, "by forcing petitioner to work," causing "slavery and peonage." $250,000 in American money is demanded, apparently as damages.

The day previously, the same plaintiff in another matter (No. 1656) had filed a petition for writ of habeas corpus, which had been denied, upon the ground (a) plaintiff was not then being held in confinement under the judgment and sentence plaintiff was then attacking; (b) he had not exhausted his state remedies. Treating the document filed as a petition for a writ of coram nobis, the petition

was denied because not directed to the court which actually sentenced plaintiff. At that hearing plaintiff was present, and acted by choice as his own attorney. A transcript of this proceeding is before us.

On December 15, 1961, plaintiff in addition to this complaint alleging peonage and a motion for a restraining order filed in the district court, also filed in the district court (a) a motion addressed *to the Supreme Court of the United States* for a restraining order; and (b) civil complaints addressed to the Supreme Court of the United States, based on alleged peonage.

Upon hearing of a motion to dismiss, filed by the Attorney General of the State of Washington, a hearing was had and plaintiff was present in court on January 2, 1962. The motion to dismiss was granted on said date.

A letter was written the court by the plaintiff and was treated as a proposed amended complaint. It was received on January 11, 1962, and on January 25, 1962, the court directed the filing of this letter as an amended complaint and required a responsive pleading to be filed by the Attorney General of the State of Washington. On February 12, 1962, an answer was filed by the State.

Meanwhile, on November 29, 1961, plaintiff had filed with this court a petition for a writ of mandamus, Miscellaneous Number 1341, asking us to require the district court to act on plaintiff's complaint. This was denied as moot on January 31, 1962. A purported *amendment* to the petition for a writ of mandamus was filed with this court on January 26, 1962. On January 31, 1962, this court made the following order in Miscellaneous Number 1387:

"The purported amendment to petition for a writ of mandamus, received by the court on January 26, 1962, cannot be considered as such since the original petition has heretofore been denied. Considering such document a motion for leave to file a new application for a writ of mandamus, the same is denied. If petitioner desires to have such document considered a notice of appeal from the district court order of December 13, 1961, in Cause No. 1675, United States District Court, Eastern District of Washington, Southern Division, he should notify the clerk of this court to that effect and apply to the district court for leave to appeal in forma pauperis. In the event such a motion is denied by the district court it may be renewed here."

Again meanwhile, and on February 8, 1962, plaintiff filed (a) a motion for the issuance of a certificate of probable cause, and (b) a notice of appeal to this court.

On February 16, 1962, plaintiff's "Reply to Respondent's Answer" was filed.

The record before us does not disclose what document was filed by the plaintiff with the Supreme Court of the United States in the matter presently pending therein.[1] However, we note that in No. 817, Miscellaneous (Supreme Court's 1961–1962 Term Calendar), Draper v. Washington, 370 U.S. 935, 82 S.Ct. 1589, 8 L.Ed.2d 806, plaintiff's "Motion for Leave to Proceed in Forma Pauperis" and the "Petition for a Writ of Certiorari" were granted. The case was transferred to the Appellate Docket and placed on the Summary Calendar for argument, immediately following No. 476 (Douglas v. California, 370 U.S. 930, 82 S.Ct. 1579, 8 L.Ed.2d 804). Number 817, Miscellaneous, on the 1961–1962 Calendar became No. 201 on the Appellate Docket, 1962–1963 Term Calendar.

Plaintiff thereafter during the next month made various motions and filed at least four new complaints. On March 20, 1962, the district court heard seven various motions, and on March 28, 1962, ruled on them. The district court also

[1] From the Minutes of the Supreme Court of the United States of June 25, 1962, we take this to have been an appeal from a decision of the Supreme Court of the State of Washington. State v. Long, 58 Wash.2d 830, 365 P.2d 31.

on March 20, 1962, with plaintiff present in court, considered the plaintiff's oral motions (a) to strike the notice of appeal, and (b) to withdraw notice of appeal. The latter motion was granted by order dated March 27, 1962. We have read the transcript of that proceeding.

The court then ordered plaintiff's oral motion granted, allowing him to file an amended complaint, combining in one amended complaint "all claims for relief that the plaintiff now has filed in this cause under seven different complaints." This was filed on March 29, 1962; an answer was filed April 9, 1962.

Plaintiff thereafter made several motions, all denied. He then filed a "Notice of Appeal to the Supreme Court of the United States." Plaintiff's "reply" to respondent's answer was then filed, and various other motions made and denied.

There thus is now pending no appeal filed with or to this court. Technically, nothing is before us. If we assume, however, that the Notice of Appeal to the Supreme Court of the United States is an attempted appeal to this court, we can and will proceed to hear the matter, considering as the Notice of Appeal the document entitled "Motion for Docketing of Appeal" and "Notice of Appearance" attached to the "Opening Appeal Brief and Argument," filed September 21, 1962 in this case.

We note first that appellant complains of matters not before the district court at the time it made its ruling; of matters not before this court at this time— "of all 16 adverse rulings" on various motions made below. Appellant then lists his "Questions Presented"; thirty-four in number, as follows:

"1. Can an administrative agency punish by decree, for an act, when a Court of Law is prohibited from punishing for the same act, by a properly enacted and wholly valid statute.

"2. Does not a special and specific statute govern over general statutes on the same subject.

"3. Can a State enact valid statutes pertaining to the United States Mail, and can such a statute be legally used to nullify United States Constitutional guarantees.

"4. Can a Federal Court protect the civil and Constitutional Rights of a State prisoner when the violations of such, are done under the name of internal discipline by an institution of the State.

"5. Can the pretext of internal discipline by a State institution be legally used to deny United States Constitutional and Civil Rights to a prisoner.

"6. Is not a citizen of the State of Washington also a citizen of the United States of America and therefore entitled to the Civil and Constitutional Rights guaranteed by the United States Constitution.

"7. Is a citizen of the United States entitled to his Constitutional Rights at all times, and to use such.

"8. If a citizen has certain Civil Rights is he entitled to exercise them, and exercise them at all times.

"9. If a citizen has certain Civil Rights can he be denied these Rights for a continuing period of time under the theory that he can bring additional suits for damages, and thereby be denied those Rights.

"10. Is a citizen entitled to use his Civil Rights without having to sue for such.

"11. Who is liable for enforcing an unconstitutional State Statute, the State, or the persons actually enforcing such a Statute, or both.

"12. Is a citizen entitled to seek a determination of his Civil Rights in a United States Court, by right.

"13. Is a citizen entitled to a temporary injunction or other suitable process to protect his Civil Rights until the Cause is determined according to law, by the Courts of this Nation.

"14. Can United States Constitutional Rights be denied or withheld because a State Statute or 'process'

. is in direct conflict therewith, legally.

"15. Which is controlling the United States Constitution and the decisions of the U. S. Supreme Court, or State Statutes, 'process' and case law.

"16. Do not my United States Civil Rights guarantee me the equal protection of State Statutes and Rights also.

"17. Can any State enact a legal statute which conflicts with the United States Postal Statutes.

"18. Can a citizen be deprived of his Right to contact the courts of this Nation, and to litigate therein, under any theory or reason.

"19. Can slavery and/or peonage and/or involuntary servitude be practiced in this Country, in any manner, before there is a final judgment of conviction for a felonious crime.

"20. Can a citizen, who is not finally convicted of a felonious crime be legally placed in confinement in a penitentiary, against his will.

"21. What are the rights of a citizen who has been convicted of a felonious crime but appeals the conviction, during the time between the finding of guilty, and the decision of the appellate Court, is rendered affirming or reversing the conviction.

"22. When a poor person, a layman, is forced to represent himself before the Courts of this Nation, is it not a denial of due process and/or his Civil Rights, to deny him access to the reference material (books) he needs to litigate, and to establish or help to establish his case.

"23. When a plaintiff seeking relief from alleged violations of his Civil Rights and damages therefore in a United States Court has alleged a conspiracy to deny and deprive him thereof, can the Court legally refuse to join the parties who are alleged to have supplied the legal advice, knowing to what use it would be placed by the receivers of such knowledge, and thereby deny plaintiff the opportunity to establish such parties willfull participation in said conspiracy, and thereby removes said parties from liability and responsibility for the willfull participation in such an illegal conspiracy.

"24. Where questions of law only are presented to a United States Court in a Civil Rights case, is it not the duty of said Court to determine the rights of the parties, and within twenty (20) months of continuous seeking upon the part of the layman plaintiff.

"25. Does a citizen have an absolute Right to file an Affidavit of Bias and Prejudice against a Federal Judge when he firmly believes that such a situation exists.

"26. Can a Federal Judge legally refuse to file an Affidavit of Bias and Prejudice when it is presented in good faith, and thereby refuse to step aside.

"27. Can a Court refuse to join the perpetrators of acts which are alleged to be illegal without affording the plaintiff an opportunity to establish the facts of the case and the liability of said individuals, and especially after a prima facie case is made.

"28. Can a State Institution under any condition legally decide what material, and which briefs, a layman litigating before a Federal Court may submit to the Courts, Attorneys, or Public Officials.

"29. Can any person, institution, or group of persons, under any circumstances delay or deny to any person or citizen within the United States the Constitutional Right to Appeal and/or the Constitutional Right to Petition and Litigate.

"30. Can a State process, rules, and Institutions be used in any manner to deny or deprive a citizen of the use and protections of United States Constitutional Rights

"SPECIAL QUESTIONS FOR THIS COURT

"31. Can a Federal Judge in any case before his Court refuse to file, honor, and accept an Affidavit of Bias and Prejudice, when it is the First Motion made in that case.

"32. Can a Federal Court refuse to issue injunctive relief until the issues are brought on for trial, after a prima facie case therefore is made.

"33. Can a Federal Court refuse to issue restraining orders until the issues are brought on for trial, after a prima facie case therefore is made.

"34. Can a Federal Court refuse a motion for a three judge court when State Statutes are challenged on Constitutional grounds and permanent injunctive relief is sought, when the motion is presented under the provisions of the special three judge federal statutes and injunctive statutes."

No answer we could give to these questions would, we are certain, satisfy the appellant.

Fundamental to appellant's appeal are his three positions: (1) That he cannot be forced to perform any labor in the penitentiary because his appeal from his final judgment of conviction has not been heard in the Supreme Court of the State of Washington; (2) that he is being denied his right to contact the courts or correspond with attorneys; (3) appellant is continually being placed in the "hole" because he will not work.

■ The voluminous record before us proves there is no merit in the second point. To support his first and third points, appellant cites numerous cases, many of which represent sound law on the facts there involved, but have no application to the facts disclosed by the record now before us. For example, appellant relies heavily on the case of Bailleaux v. Holmes, 1959, D.C., 177 F.Supp. 361.[2] He fails to realize or recognize that that case was reversed by this court in Hatfield v. Bailleaux, 1961, 290 F.2d 632.

■ Because a defendant appeals a conviction, or questions it by a collateral attack, he is not entitled, pending a final determination, to his freedom; nor to enunciate to the warden the rules by which he is to be governed during his confinement.

■ There is no federally protected right of a state prisoner not to work while imprisoned after conviction, even though that conviction is being appealed.

■ Prison rules may require appellant to work but this is not the sort of involuntary servitude which violates Thirteenth Amendment rights. Butler v. Perry, 240 U.S. 328, 332, 36 S.Ct. 258, 259, 60 L.Ed. 672, where it was said:

"This amendment was adopted with reference to conditions existing since the foundation of our Government, and the term involuntary servitude was intended to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results."

■■ Where a person is duly tried, convicted, sentenced and imprisoned for crime in accordance with law, no issue of peonage or involuntary servitude arises. Lindsey v. Leavy, 9 Cir., 149 F.2d 899. The Thirteenth Amendment has no application where a person is held to answer for a violation of a penal statute. Blass v. Weigel, D.C., 85 F.Supp. 775, 781.

■ It follows, therefore, that whether appellant is being held in the state penitentiary or the county jail, he may be required to work in accordance with institution rules.

■ Appellant asserts, however, that he is being improperly held in the state penitentiary, and that in accordance with state law he should be in the county

---

2. Cited by appellant under various names, such as "Ballixuea v. Holmes, —— F.D2"

(p. 9, Plaintiff's Reply to Defendant's Answer), filed July 9, 1962.

jail. Due process questions do not arise merely because appellant has been treated at variance with state law. Hughes v. Heinze, 9 Cir., 1959, 268 F.2d 864, 869. No denial of equal protection is shown unless there is shown intentional or purposeful discrimination between persons or classes. Hoffman v. Halden, 9 Cir., 1959, 268 F.2d 280, 290.

The sum of appellant's position is that the district court's actions were "so arbitrary and capreciuos (sic) as to deny him" constitutional rights and due process of law.

Appellant raised many points on appeal that relate to unappealable orders.

We have read the transcript of proceedings had on December 14, 1961, on March 20, 1962 and on April 19, 1962. We find no arbitrary or capricious action on the part of the trial judge.

We also note that there is no final judgment of the court below. There being none, there is nothing before us upon which an appeal can be based.

The appeal is, therefore, herewith dismissed.